**UNITED STATES of America, Appellee,**

v.

**Raymond S. BUDZYNA, Defendant, Appellant.**

**No. 81–1082.**

United States Court of Appeals, First Circuit.

Argued Sept. 10, 1981.

Decided Dec. 4, 1981.

---

Richard D. Glovsky, Boston, Mass., with whom Hanify, King & Glovsky, Boston, Mass., M. Robert Revelli, and Abodeely, Baylis & Revelli, P. C., Worcester, Mass., were on brief, for defendant, appellant.

Thomas J. Drinan, Asst. U. S. Atty., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before ALDRICH, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Raymond S. Budzyna was convicted in the district court after a jury-waived trial of having violated 18 U.S.C. § 1014, which makes it a crime for a person knowingly to make false statements in a loan application to a federally insured bank. The alleged false statements, made in connection with an automobile loan application, concerned Budzyna's former employment. Budzyna now appeals from the conviction.

On January 10, 1978, Budzyna applied for an automobile loan for $5,000 at the Worcester County National Bank. Collateral was to be a 1973 Mercedes Benz. The bank approved the loan and advanced the funds to Budzyna, and he in turn endorsed the certificate of title to the car over to the bank and left the certificate with the bank.

On March 30, 1978, Agent Ryall of the FBI, approached an official of the Worcester bank and made inquiries concerning the nature and amount of the loan made to appellant. At this time bank officials voluntarily surrendered the certificate of title, and copies of the loan application and note, to Agent Ryall.[1]

On June 27, 1978, Budzyna visited the bank and requested the return of the certificate of title. Upon being advised that the certificate had been surrendered to Agent Ryall, appellant called the local office of the FBI, spoke with Agent Ryall and requested the return of the certificate of title. Agent Ryall confirmed that he held the certificate of title and told appellant to stop by the Worcester FBI office to discuss the matter.

When appellant arrived at the FBI office, Agent Ryall informed him that the FBI was conducting an investigation of the bank loan and that until permission to release the certificate was received from the U.S. Attorney's office the FBI intended to retain the document as evidence. Agent Ryall then asked appellant to sign a waiver of rights form and to answer some questions concerning the loan. When appellant at first refused either to sign the proffered form or to respond to Agent Ryall's inquiries, Agent Ryall left the room, called the U.S. Attorney's office and received instructions to return the certificate of title to appellant.

What happened next was disputed at the trial. Budzyna testified that the agent reappeared and waived the certificate "in an almost tempting fashion." According to Budzyna, "If I would give him a statement he would give me the title"; Budzyna intimates in his testimony that he thereafter signed the waiver form and made certain admissions only because of his desire to obtain the certificate in order to consummate a deal that day relative to the car. Agent Ryall, buttressed by testimony from another agent who had been present, presented a different version. Ryall testified that after telephoning the Assistant U.S. Attorney he typed up a receipt, returned to the room where Budzyna awaited him, and told Budzyna that he had been instructed to return the title to him, and that he intended to do so at that time whether Budzyna talked to him about the loan or not. Both agents denied having threatened or coerced Budzyna, and in particular denied having required him to speak as a quid pro quo for return of the title document. According to the agents, the title document was returned to Budzyna before he made his incriminating remarks; and Budzyna also read and signed the waiver of rights form before doing so.

On December 11, 1979, Special Agent Ryall executed a complaint against appellant, charging him with a violation of 18 U.S.C. § 1014. On January 7, 1980 [hereinafter all dates are within 1980 unless otherwise specified], appellant was notified of both the complaint and of scheduled bail and probable cause hearings. On January 14, appellant requested a continuance, and the case was continued until February 6, at which time the bail and probable cause

---

1. By March 30, 1978, the loan had been paid off—not by Budzyna but by an acquaintance under whose sponsorship at the bank Budzyna had obtained the loan. The bank had apparently requested repayment from Budzyna's sponsor when it learned that Budzyna was under investigation.

hearings were continued due to the illness of the magistrate. A one count indictment was returned on May 8, appellant was arraigned on June 17, and trial was scheduled for July 21. On the original trial date, the government, citing the absence of a material witness, requested a continuance, and the trial was rescheduled for September 4. On September 1, the government requested an additional delay due to the continued unavailability of a witness. The motion was allowed, and trial was set for October 14.[2]

On October 14, an additional continuance was granted when the government informed the court that it was seeking a superseding indictment which would result in the partial dismissal of count one of the original indictment. On October 17, a superseding indictment was returned, and appellant requested a continuance in order to file several motions. This request was granted, and an excusable delay was permitted for nine days. On October 29, appellant filed several pretrial motions,[3] including a motion to dismiss the superseding indictment on the ground that the government had failed to conduct the case expeditiously. This motion was denied, and on November 6, appellant was tried without a jury and found guilty of violating 18 U.S.C. § 1014. On January 12, 1981, the district court entered judgment and sentenced appellant to a fine of $2,000.

### 1. Application of the Speedy Trial Act

Appellant argues that the Speedy Trial Act mandates the dismissal of his conviction.[4] He says that by permitting 90 days to elapse between the issuance of the complaint and the return of the indictment, the government violated 18 U.S.C. § 3161(b) which, in relevant part, provides that, "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." Appellant further contends that, by permitting 142 days to elapse between the date of arraignment and the time of trial, the government violated 18 U.S.C. § 3161(c) which provides,

> (c)(1) In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall

---

2. On October 15, the district court entered an order for excusable delay for 86 days based on the unavailability of an essential witness.

3. The pretrial motions included a motion to suppress statements given by appellant, a motion to suppress the testimony of live witnesses, a motion to suppress evidence obtained through an illegal search and seizure, and a motion to inspect the grand jury minutes of the superseding indictment. All the motions were denied except the court allowed the motion to inspect grand jury minutes on November 6, just prior to commencement of the trial. Appellant, however, was unable to review these minutes prior to trial because the minutes had not been transcribed. In granting appellant's motion, the court preserved appellant's right to request a dismissal of the indictment if the transcript should reveal either that appellant had been prejudiced by its unavailability or that during the second grand jury proceeding the government had conducted itself in an improper manner.

4. Subsections 3162(a)(1), (2) of title 18 provide that a failure to comply with the provisions of 18 U.S.C. § 3161(b), (c) will result in the dismissal of the case:

> (a)(1) If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.
>
> (2) If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant. The defendant shall have the burden of proof of supporting such motion but the Government shall have the burden of going forward with the evidence in connection with any exclusion of time under subparagraph 3161(h)(3).

commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. If a defendant consents in writing to be tried before a magistrate on a complaint, the trial shall commence within seventy days from the date of such consent.

(2) Unless the defendant consents in writing to the contrary, the trial shall not commence less than thirty days from the date on which the defendant first appears through counsel or expressly waives counsel and elects to proceed pro se.

■ The government denies that the Speedy Trial Act mandates dismissal. It points out that the case was commenced by summons on January 7, 1980, and that the initial indictment was returned on May 8, 1980, both dates preceding the effective date of the mandatory dismissal sanctions of section 3163(c).[5] Appellant responds by pointing out that he was tried and convicted under a superseding indictment which was filed after July 1, 1980. This he contends subjects the entire proceeding to the sanction provisions of the Act.

We agree with the government that the sanction provisions of the Act do not reach this case. To be sure, 18 U.S.C. § 3163(c) provides that the mandatory dismissal provisions "shall become effective and apply to . . . all informations or indictments filed, on or after July 1, 1980." But where, as here, the same case involves both an original and a superseding indictment, the question becomes which indictment should control for section 3163(c) purposes. We do not think Congress intended the date of a superseding indictment, constituting a mere amendment of the original, to take priority over the original for purposes of determining whether or not the sanction provisions apply to the ongoing case.

The present case was begun by the indictment returned on May 8, 1979. Where that indictment was filed before July 1, 1980, the case was not subject to sanctions for noncompliance with speedy trial provisions. The superseding indictment merely reformulated the earlier indictment by dropping one of the false statements being charged (because, we are told, of the disappearance of a government witness needed to sustain the matter). Otherwise the new indictment alleged the same conduct and the same criminal charge in what was, for all practical purposes, the same case.

The implemental plan adopted by the District of Massachusetts[6] expressly provides for the original indictment to determine the time limits for the commencement of trial. Thus the District Court Plan at 4c(3), (4) provides,

(3) If the original indictment or information is pending at the time the subsequent charge is filed, the time limit for commencement of trial on the subsequent charge shall be the time limit for commencement of trial on the original indictment or information.

(4) If the original indictment or information was dismissed on motion of the United States Attorney before the filing of the subsequent charge, the time limit for commencement of trial on the subsequent charge shall be the time limit for commencement of trial on the original indictment or information, as extended by a period equal to that during which charges were not outstanding.

By the same token, we think the date of the initiating indictment determines the applicability of sanctions under section 3162. Thus we hold the present case was not subject to those sanctions, and therefore— even assuming noncompliance with the time

---

5. 18 U.S.C. § 3163(c) provides that the mandatory dismissal provisions of 18 U.S.C. § 3162

    shall become effective and apply to all cases commenced by arrest or summons, and all informations or indictments filed, on or after July 1, 1980.

6. Pursuant to 18 U.S.C. § 3165 the United States District Court for the District of Massachusetts had formulated a statement of time limits and procedures to be used in implementing the provisions of the Act.

limits of the Act—there is no basis for dismissing the charge against Budzyna.

■ As an alternative ground for dismissal, appellant argues that the delay between the original indictment and the trial violated his constitutional right to a speedy trial. However, appellant has failed to satisfy us that the delay caused him significant prejudice, or that the government acted in less than good faith in conducting the litigation as it did. We hold that Budzyna's sixth amendment rights were not violated. See Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); United States v. Johnson, 579 F.2d 122 (1st Cir. 1978).

### 2. Excluding Statements Made by Appellant to FBI Officers

Appellant contends that the district court committed reversible error by failing to exclude statements he made during his June 27 interview with Agent Ryall. These statements, he contends, were the result (1) of an illegal search and seizure, and (2) of an interrogation procedure which overbore his ability to resist questioning. We consider each of these contentions in turn.

■ Appellant's fourth amendment argument for suppressing the statements goes as follows: Agent Ryall violated his privacy rights by taking the certificate of title from the bank without his permission and without a warrant. Thereafter Ryall caused appellant to talk by withholding, or threatening to withhold, the illegally acquired certificate. The statements were thus the fruits of an illegal search and seizure and, as such, were suppressible. We think, however, that the relationship between Budzyna's statements to the FBI and any illegality surrounding the FBI's procurement of the certificate is too attenuated to require suppression of the statements. (Budzyna expressly advised the court that he did not seek suppression of the certificate itself.) Even assuming the agents' taking of the

certificate could be said to violate the fourth amendment (see below), the question still remains whether the admissions made at the FBI office were "sufficiently an act of free will to purge the primary taint." Wong Sun v. United States, 371 U.S. 471, 486, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963). See Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). We think they were. The district court was entitled to credit the testimony of the two agents that they returned the title document to Budzyna before he talked and that they had not demanded a statement as the price of their returning the document to him. The district court could thus reasonably have concluded that there was no meaningful connection between the incriminating remarks and the prior illegal conduct.[7] Brown v. Illinois, 422 U.S. at 603–04, 95 S.Ct. at 2261–62 (listing factors to be weighed).

Furthermore, it is by no means clear (although we do not now decide the matter) that when the agents took the certificate of title from the bank, with the bank's consent, they violated Budzyna's fourth amendment rights. The bank may have had a sufficient interest in the document for its consent to have validated the agent's possession. See United States v. Miller, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976). See also United States v. Matlock, 415 U.S. 164, 170, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974) (consent of one possessing common authority over effects is valid as against an absent, nonconsenting person with whom authority is shared). Named in the document as lien holder, the bank's possession of the certificate was entirely lawful. It is true that the loan had just been paid off, vitiating the bank's security interest. But repayment was by another at the bank's request (possibly vesting in that other person a security interest by right of subrogation and, if so, giving the bank some justification for continuing to withhold possession as against Budzyna). Budzyna did not, in

---

**7.** We note that whether or not the agents were entitled to take the document from the bank, they clearly would have been entitled to inspect and copy it at the bank. United States v. Miller, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d

71 (1976). Thus there can be no contention that any information or leads the FBI gleaned from the contents of the certificate were unusable. The illegality, if any, lay in taking possession of the certificate.

any event, seek return of the certificate of title before the bank released it to the agents. And on whichever side of the fourth amendment line these niceties fall, any possible violation would hardly amount to "flagrant" official misconduct. *Brown v. Illinois*, 422 U.S. at 604, 95 S.Ct. at 2262.[8]

We hold that the matters sought to be suppressed—Budzyna's own statements in the FBI office—were too remote from any possible illegality connected with seizure of the certificate of title to warrant suppression.

■ Appellant's other argument for exclusion of his admissions is that they were involuntary and obtained in violation of the fifth amendment. We find no error in the district court's implied finding to the contrary. The record discloses that appellant voluntarily appeared at the FBI office, that he realized he was free to leave the office at any time during the interview, and that during the period in question, he left the FBI office in order to make several telephone calls and to purchase coffee. Appellant clearly was not deprived of his physical liberty. Additionally, appellant, prior to making the incriminating statements, signed a waiver of rights form which advised him of his constitutional rights. The latter, while not conclusive, was a factor to be considered in assessing the voluntariness of the admission. *Davis v. North Carolina*, 384 U.S. 737, 86 S.Ct. 1344, 16 L.Ed.2d 360 (1966).

Relying on his own version of what transpired, appellant contends that Agent Ryall coercively withheld the certificate of title. But the district court was not required to credit appellant's version of events. The agents insisted that Agent Ryall neither conditioned the return of the certificate on appellant's willingness to make a statement nor withheld the return of the certificate until a statement had been made. Reviewing appellant's arguments in the context of the totality of circumstances surrounding the interrogation, we believe the court below could properly conclude that his statements were not involuntary. *United States v. Mapp*, 561 F.2d 685 (7th Cir. 1977).

### 3. *Appellant's Jencks Act Claims*

■ Appellant asserts that the district court's failure to comply with the Jencks Act requires us to reverse his conviction. The relevant provisions of the Jencks Act are in 18 U.S.C. § 3500(b), (d), which provide,

(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in possession of the United States which relates to the subject matter as to which the witness has testified.

(d) If the United States elects not to comply with an order of the court under subsection (b) . . . hereof to deliver to the defendant any such statement, or such portion thereof as the court may direct, the court shall strike from the record the testimony of the witness.

Prior to trial, appellant filed a motion to inspect the grand jury minutes of both the January 1980 indictment and the October 1980 superseding indictment. At a pretrial hearing on November 6, the government made available the minutes pertaining to the initial indictment but informed the court that the transcript from the grand jury proceeding concerning the superseding indictment (returned less than a month earlier) had not yet been typed and was thus not yet available for inspection. Appellant stated that he believed he had a right to inspect the grand jury minutes. The court then engaged appellant in a lengthy dialogue to determine both the source and nature of appellant's claimed rights. In his response to the court's inquiries, appellant

---

8. In his brief appellant argues that the trial court should have considered suppressing the evidence under the Right to Financial Privacy Act, 12 U.S.C. § 3401 *et seq.*, which was enacted subsequent to the bank's surrender of the certificate of title but two years prior to appellant's trial. We decline to rule that the Right to Financial Privacy Act applies to events that occurred prior to the effective date of the Act.

did not mention the Jencks Act nor even state that he wished to obtain grand jury statements by Ryall for later use in examining Ryall after the agent testified at trial. Rather appellant's counsel spoke of being concerned that Agent Ryall had been permitted to hear testimony given by other witnesses during the grand jury proceeding. After considering appellant's arguments the district judge treated appellant's expressed concerns as tantamount to a motion to dismiss the indictment. The court then granted appellant's motion to inspect grand jury minutes but refused to dismiss. In making this ruling, the district judge stipulated that if after reviewing the grand jury minutes appellant should discover any irregularities in the grand jury proceedings, he could petition the court for a rehearing on the motion. Thereafter, after Ryall testified on direct examination, Budzyna made no motion alluding to the Jencks Act or seeking Ryall's grand jury statements, nor did Budzyna move to strike Ryall's testimony.

Appellant now argues that the court should sua sponte have stricken Agent Ryall's testimony and that failure to do so was an abuse of judicial discretion. The contention is without merit. If appellant wanted relief of this nature under the Jencks Act, he was obliged to present a proper and timely request to the district court. *United States v. Peterson*, 524 F.2d 167 (4th Cir. 1975), *cert. denied*, 423 U.S. 1088, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976), 424 U.S. 925, 96 S.Ct. 1136, 47 L.Ed.2d 334 (1976); *Hanger v. United States*, 398 F.2d 91 (8th Cir. 1968), *cert. denied*, 393 U.S. 1119, 89 S.Ct. 995, 22 L.Ed.2d 124 (1969); *National Dairy Products Corp. v. United States*, 384 F.2d 457 (8th Cir. 1967), *cert. denied*, 390 U.S. 957, 88 S.Ct. 1032, 19 L.Ed.2d 1151 (1968). He failed to do so at trial or provide the district court with any indication that such was the nature of his claim.

This court and other circuit courts have held that district courts have significant discretion in applying the exclusion provisions of the Jencks Act. *See United States v. Principe*, 499 F.2d 1135 (1st Cir. 1974);

*United States v. Heath*, 580 F.2d 1011 (10th Cir.), *cert. denied*, 439 U.S. 1075, 99 S.Ct. 850, 59 L.Ed.2d 42 (1978); *United States v. Perry*, 471 F.2d 1057 (D.C.Cir.1972). Here where appellant presented a muddled motion which he only now characterizes as a Jencks Act request, where the government's failure to produce a transcript has not been shown to be the result of bad faith, and where the district court offered appellant adequate and reasonable protection against what appeared at the time to be the harm appellant feared, we cannot say that the district court abused its discretion in proceeding as it did.

*Affirmed.*