**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**SEARS, ROEBUCK AND COMPANY,**
**INC., aka Sears, aka Sears &**
**Roebuck, Defendant–Appellee.**

No. 88–5062.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 3, 1988.

Decided Jan. 26, 1989.

As Amended on Denial of Rehearing and
Rehearing En Banc
June 5, 1989.

Victor D. Stone, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellant.

Stephen D. Miller, Los Angeles, Cal., for defendant-appellee.

Before FLETCHER, ALARCON and KOZINSKI, Circuit Judges.

FLETCHER, Circuit Judge:

This case involves the claim that Sears conspired to defraud the United States government by overstating to customs agents the price it had paid for television receivers purchased from Japanese manufacturers. The current appeal is the fifth pretrial appeal and the fourth time that the government has appealed a dismissal of the criminal indictment in this case. The government appeals the district court's dismissal of the indictment this time on the basis that the delay in spreading the appellate mandate violated the Sixth Amendment, Federal R.Crim.P. 48(b), and the Speedy Trial Act. We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse.

I

A long and complicated history is prologue to this appeal. On February 26, 1980, the government filed a thirteen count indictment against Sears charging it with conspiracy to defraud the United States and entering television receivers into the United States by means of false statements in violation of 18 U.S.C. § 542. Sears was initially unsuccessful both before the district court and this court in seeking dismissal of the indictment, *United States v. Sears*, 647 F.2d 902 (9th Cir.1981). Subse-

quently, however, the district court dismissed the indictment, but it was reinstated on appeal, *United States v. Sears,* 518 F.Supp. 179 (C.D.Cal.1981), *rev'd,* 719 F.2d 1386 (9th Cir.1983).

On January 17, 1984, the government filed a superseding indictment alleging essentially the same facts, but relying on 18 U.S.C. § 1001, rather than § 542. The district court again dismissed the indictment, and this court summarily reversed and reinstated the indictment on appeal, *United States v. Sears,* No. 84–5091 (9th Cir. June 18, 1984). The district court dismissed the indictment again, this time on the basis of the statute of limitations. On March 25, 1986, this court yet again reinstated the indictment, holding that the filing date of the superseding indictment related back to the original indictment and thus did not violate the statute of limitations since the superseding indictment "did not expand or broaden" the original charges. This court also ordered the district court judge, Chief Judge Real, to transfer the case to another district court judge because "[t]he district judge's statements and conduct evidence an unwillingness to preside in this case." *United States v. Sears,* 785 F.2d 777, 781 (9th Cir.1986).

The mandate from this court issued on October 17, 1986 and was received by the district court three days later. A duplicate of the mandate was received by the district court on January 23, 1987. The duplicate mandate was apparently sent by the clerk of this court to the clerk of the district court because the district court clerk's office was unable to locate the original mandate when queried by government counsel as to its whereabouts. In the order dismissing the indictment, that is the subject of this appeal, the district court judge, Judge Hauk, characterized the receipt of the mandate as a lodging and as "premature."

On October 20, 1986, Sears filed for a writ of certiorari in the Supreme Court. At or about the same time, Chief Judge Real filed an independent action in the Supreme Court seeking a writ of mandamus and/or prohibition against this court from ordering him to reassign this case. The Supreme Court denied both Chief Judge Real's and Sears' petitions on December 1, 1986.

Government counsel phoned Chief Judge Real's courtroom Deputy Clerk on February 2, 1987 to inquire about the status of the mandate from this court and was told that the district court would not file or spread it pending the outcome of another case. At that time, *Brown v. Baden & Yagman v. U.S. District Court for the Central District of California,* 815 F.2d 575, 576 (9th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987) ("*Yagman II*"), was pending before this court. In *Yagman II,* Chief Judge Real in effect challenged this court's authority to order him to reassign a case. On April 23, 1987, this court reaffirmed its authority to order the reassignment of a case and ordered Chief Judge Real a second time to transfer the *Yagman* case. Petition for rehearing in *Yagman II* was denied on June 26, 1987.

On March 27, 1987, the government wrote Chief Judge Real's courtroom Deputy Clerk asking that the mandate be filed and spread or, alternatively, that the district court outline its plans for procedure in the case. In response, the clerk placed a note in the court file stating "Judge said to take no action."

On June 23, 1987, the government formally moved before Chief Judge Real, requesting him to file and spread the mandate. On July 7, 1987, Sears moved for dismissal of the indictment on the basis of the Speedy Trial Act.

On July 10, 1987, Judge Real reassigned the case. The judge to whom the case was reassigned, Judge Hauk, continued the status hearing from July 20, 1987 to August 10, 1987. On August 10, 1987, Judge Hauk spread the mandate, heard oral argument on Sears' motion, and then indicated orally that he would order dismissal of the indictment. Judge Hauk issued his dismissal order and supporting memorandum in this case on January 19, 1988. 677 F.Supp. 1042.

## II

Judge Hauk held that dismissal of the indictment was mandated by the Speedy Trial Act. The government argues that the Speedy Trial Act's sanctions do not apply to this case on the basis of 18 U.S.C. § 3163(c), which states that sanctions "shall become effective and apply to ... all informations or indictments filed, on or after July 1, 1980." We review a district court's interpretation of the Speedy Trial Act *de novo. United States v. Crooks,* 804 F.2d 1441, 1445 (9th Cir.1986), *modified,* 826 F.2d 4 (9th Cir.1987).

■ Since the original indictment in this case was filed before July 1, 1980 but the superseding indictment was filed after July 1, 1980, this case presents the question of whether the date of the original or superseding indictment governs for purposes of determining the applicability of the Speedy Trial Act's sanctions.

The First Circuit has squarely addressed this issue. The government correctly relies on *United States v. Mack,* 669 F.2d 28 (1st Cir.1982), in which the First Circuit held that the Speedy Trial Act does not apply where the defendant entered a guilty plea before July 1, 1980, his plea was vacated on appeal in December 1980, and thereafter the dismissed counts of the original indictment were reinstated. The court concluded that "it is the date of the original arrest indictment or information that determines whether § 3162 sanctions are applicable." *Id.* at 34. *Mack* built on *United States v. Budzyna,* 666 F.2d 666, 670 (1st Cir.1981), which held that the date of the original, pre-July 1980 indictment governed where the superseding indictment constituted "a mere amendment of the original." *Sears* does not argue that the superseding indictment in this case fails *Budzyna's* "mere amendment" test, presumably because in *United States v. Sears,* 785 F.2d at 779, we found that the superseding indictment did not substantially change or broaden the original indictment. *See also United States v. Felton,* 811 F.2d 190, 194–95 (3d Cir.1987) (en banc) (suggesting that it would apply *Budzyna* where "a supersed-

ing indictment ... reformulated the earlier charges.").

The First Circuit's interpretation is persuasive. Since the legislative history does not address the specific question of superseding indictments, we must be guided by the overall purposes of § 3163(c). The First Circuit reasoned that, since sanctions would not apply to a case originally filed before July 1, 1980, in which an appeal resulted in a new trial after July 1, 1980, "uniformity, consistency and predictability and [thus the statutory purpose of promoting the administration of criminal justice] required that sanctions not apply to a case originally filed before July 1, 1980 in which a collateral attack resulted in the reinstatement of the original indictments after July 1, 1980." *Mack,* 669 F.2d at 34. The same reasoning applies here. Since the original indictment would not have been subject to speedy trial sanctions had the government pursued it after this court reversed Chief Judge Real's dismissal order in *Sears,* No. 84–5091, the same should be true of the substantially identical indictment the government did in fact pursue.

## III

■ Judge Hauk also found that dismissal was warranted under Fed.R.Crim.P. 48(b) which provides that "if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment." "It is within the trial court's inherent power to dismiss a case with prejudice [under Rule 48(b) ] for prosecutorial delay not amounting to a Sixth Amendment violation." *United States v. Hattrup,* 763 F.2d 376, 377 (9th Cir.1985). We review the district court's dismissal for want of prosecution under Fed.R.Crim.P. 48(b) for an abuse of discretion. *See United States v. Gilbert,* 813 F.2d 1523, 1531 (9th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 173, 98 L.Ed.2d 127 (1987).

A Rule 48(b) dismissal should be imposed only in extreme circumstances. *United States v. National Medical Enterprises,* 792 F.2d 906, 912 (9th Cir.1986). Because of the sanction's severity, we have held that a district court abuses its discretion if

it imposes the sanction of dismissal under Rule 48(b) without first satisfying the requirements of "caution" and "forewarning." Neither was met in this case.

A Rule 48(b) dismissal with prejudice is proper only after a "forewarning of the consequences" of further delay.[1] *United States v. Gilbert,* 813 F.2d 1523, 1531 (9th Cir.1987). Neither Judge Hauk nor Chief Judge Real ever forewarned the government of the possibility of a Rule 48(b) dismissal.

In addition to a forewarning, this court requires that a district court exercise "caution" in dismissing a case under Rule 48(b). The caution requirement is satisfied where the reason for dismissal is "prosecutorial misconduct and demonstrable prejudice or substantial [threat] thereof." *Gilbert,* 813 F.2d at 1531 (quoting *United States v. Hattrup,* 763 F.2d 376, 378 (9th Cir.1985)).

Judge Hauk found that the government had engaged in misconduct and that the delay had prejudiced Sears. However, neither Sears nor Judge Hauk have pointed to any evidence of *actual* prejudice to Sears from the past delays, and the record reveals none. In concluding without explanation that Sears had been "egregiously prejudic[ed]", Judge Hauk perhaps had in mind the possibility that Sears had suffered prejudice as a result of the pretrial delay.[2] However, the mere possibility of prejudice is insufficient to justify dismissal under Rule 48(b).[3] *See Hattrup,* 763 F.2d at 378 (the court considering the threat of harm from future delay reversed a Rule 48(b) dismissal in part because "there is

nothing in the record, aside from defendant counsel's speculations, which suggests that [the delay] would have resulted in prejudice [to the defendants]"); *Gilbert,* 813 F.2d at 1531 (reaffirming *Hattrup*'s requirement of "demonstrable prejudice or substantial [threat] thereof").

With respect to the finding of prosecutorial misconduct, Judge Hauk relied on (1) the government's misconduct "at the beginning" of the prosecution; (2) the impropriety of the government's letter and telephone call to the court clerk; and (3) the government's five month delay in filing the motion to spread the mandate.

Judge Hauk found that the government's failure to press the court to spread the mandate was inexcusable given "the clear prosecutorial misconduct and error in the beginning" of this case. Judge Hauk's reliance on this alleged misconduct and error was clearly improper. In an earlier opinion, we rejected Sears claim that the government's alleged misconduct in seeking an indictment from the grand jury justifies dismissal in this case. *Sears,* 719 F.2d at 1392.

Judge Hauk also erred in basing the dismissal in part on the government's apparent violation of local rules requiring that all communications with the district court be made by means of formal motions. In evaluating Rule 48(b) motions and orders, courts appropriately examine prosecutorial misconduct which contributed to the delay in question. *See generally* 3A Wright & Miller, Federal Practice and Procedure § 814, at 214–220 (1982). However,

---

**1.** Judge Hauk's dismissal was explicitly with prejudice. Our analysis would not differ had Judge Hauk dismissed without prejudice, because the statute of limitations had run. *See United States v. Charnay,* 577 F.2d 81, 83 n. 1 (9th Cir.1978) ("although the court did not indicate that the dismissal of the indictment was with prejudice, the dismissal had that effect since the applicable statute of limitations had run and consequently the defendants could not be reindicted").

**2.** Judge Hauk stated during the hearing that Sears was prejudiced because the superseding indictment charged a more serious crime than the original indictment. We explicitly rejected this view in *Sears,* 785 F.2d at 778–79.

**3.** Outside this Circuit, a few courts have presumed prejudice in the Rule 48(b) context from the length of the delay, but in those cases the delay far exceeded the five month delay considered by Judge Hauk. *See, e.g., United States v. Zabady,* 546 F.Supp. 35, 38–40 (M.D.Pa.1982) (four months of actual delay plus the prospect of at least one year of prospective delay before trial presumptively prejudicial); *United States v. Dowl,* 394 F.Supp. 1250, 1257 (D.Minn.1975) (28–month delay presumptively prejudicial); *United States v. Blanca Perez,* 310 F.Supp. 550, 554 (S.D.N.Y.1970) (four year delay presumptively prejudicial).

in this case, the government's decision to use an apparently inappropriate means of communicating with the court in and of itself had nothing to do with delay.

■ Finally, Judge Hauk erred in finding that the five month delay following the receipt of the duplicate mandate justified dismissal. Judge Hauk did not find that the government had deliberately sought to delay the trial. He found only that the government had been aware of the issuance of the mandate and (presumably) the Speedy Trial Act limits and that it had mistakenly decided to defer a formal motion until *Yagman II* resolved Chief Judge Real's challenge to this court's authority to order the reassignment of a case. Moreover, Judge Hauk recognized that the government had contacted the district court twice in order to encourage the court to spread and file the mandate. Thus, Judge Hauk at most implicitly found that the government had been negligent in adopting a rather cautious approach in its efforts to persuade the court to spread the mandate. In general dismissal under Rule 48(b) is appropriate only where there is "delay that is 'purposeful or oppressive.'" 3A Wright & Miller, Federal Practice and Procedure § 814, at 219 (citation omitted). *See United States v. Towill*, 548 F.2d 1363, 1370 (9th Cir.1977) (in upholding dismissal, appeals court noted that the district court had relied on alleged government harassment in ordering dismissal). Further, Judge Hauk found that the government's conduct with respect to the filing of the mandate warranted dismissal only because of the earlier delays in this case. Specifically, he stated that "[t]he original indictment was filed almost eight years ago. The events at issue here occurred between twelve and twenty-one years ago. Any additional delay was unwarranted ... and thus cannot be tolerated." However, Judge Hauk himself charged the government with responsibility only for the five month delay following the receipt of the duplicate mandate, and even Sears concedes that there would be no legal basis for holding the government responsible for the years of delay resulting from the interlocutory appeals in this case.

**IV**

Judge Hauk's third basis for dismissing the indictment was the Sixth Amendment right to a speedy trial. Under *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972), the courts review four factors in determining whether a defendant has been deprived of his right to a speedy trial—length of delay, the reason for delay, the defendant's assertion of his right, and prejudice to the defendant. Judge Hauk found that all four factors warranted a finding of a constitutional violation, but offered little explanation of his reasoning. We review a dismissal for a violation of the constitutional right to a speedy trial for an abuse of discretion. *United States v. Mills*, 641 F.2d 785, 787 (9th Cir.1981).

The length of delay is a "threshold" factor. If "presumptively prejudicial," the length of delay necessitates an examination of the other three factors. *United States v. Nance*, 666 F.2d 353, 360 (9th Cir.1982). The delay is measured from the time of the indictment to the time of trial, excluding periods during which the indictment is dismissed. *See United States v. Loud Hawk*, 474 U.S. 302, 314, 106 S.Ct. 648, 655, 88 L.Ed.2d 640 (1986); *Nance*, 666 F.2d at 360. In cases of pretrial dismissal, the measured time presumably is the delay between the indictment and the dismissal. No cases address how this calculation is made in a case with an original and a superseding indictment. However, in this case the delay was sufficiently long to raise the presumption of prejudice whether the delay is measured from the original indictment (49½ months) or the superseding one (30½ months).

■ However, the other three *Barker* factors strongly weigh against a finding of a constitutional violation. The reason for delay is the focal inquiry. *Loud Hawk*, 474 U.S. at 315, 106 S.Ct. at 656 ("The flag all litigants seek to capture is the second factor, the reason for delay"). Sears concedes that the government can at most be charged with responsibility for the delay

following the last interlocutory appeal. The delay at worst can be characterized as the result of government negligence. *See Barker,* 407 U.S. at 531, 92 S.Ct. at 2192 ("A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence ... should be weighted less heavily").

■ Sears' failure to assert its right to a speedy trial in a timely fashion also weighs heavily against dismissal. Although a defendant cannot "waive" his Sixth Amendment right to a speedy trial, the failure of a defendant to press for trial on the merits "is entitled to strong evidentiary weight in determining whether the defendant [was] deprived of [this] right." *Barker,* 407 U.S. at 531–32, 92 S.Ct. at 2192–93. Sears never complained about delay in the prosecution of this case until it moved for dismissal on Speedy Trial Act grounds (and *not* Sixth Amendment grounds) on July 7, 1987—7½ years after the original indictment, 3½ years after the superseding indictment, and 9 months after the issuance of the latest appellate mandate. As in *Barker,* "it is clear that no alternative motion was made for an immediate trial. Instead the record strongly suggests that ... while [the defendant] hoped to take advantage of the delay in which he acquiesced, and thereby obtain a dismissal of charges, [the defendant] definitely did not want to be tried." *Barker,* 407 U.S. at 535, 92 S.Ct. at 2194. *See also United States v. Simmons,* 536 F.2d 827, 831 & n. 15 (9th Cir.1976) ("Concerning the defendant's assertion of his right to a speedy trial, we note there was no such formal demand here prior to the dismissal.... We note that appellee requested dismissal, based on pre-indictment delay on due process grounds which motion was denied by the district judge. Nowhere in that motion nor in any other portion of the record, was there a demand for a speedy trial"). Indeed, Sears actively sought to avoid trial by pursuing four pretrial motions, which led to the rejection of Sears' position four times by this court. *Compare Loud Hawk,* 474 U.S. at 314, 106 S.Ct. at 655 (noting that the weight of the defendants' repeated assertions of their right to a speedy trial claims was counterbalanced by their filing of frivolous petitions for rehearing and certiorari and "repetitive and unsuccessful motions"); *United States v. Litton Systems,* 722 F.2d 264, 271 (5th Cir.1984) (finding that defendant had not asserted his Sixth Amendment right to a speedy trial in part because the defendant sought continuances ostensibly for trial preparation).

■ Finally, Sears did not make a showing of prejudice which could justify dismissal on Sixth Amendment grounds. As noted above, Sears offered no examples of actual prejudice to it resulting from the pretrial delay. In *United States v. Loud Hawk,* 474 U.S. 302, 106 S.Ct. 648, 88 L.Ed. 2d 640 (1986), the Court rejected the view that the mere possibility of prejudice is sufficient in the Sixth Amendment context. Although *Loud Hawk* involved a far longer delay than the delay in this case—90 months—the Supreme Court agreed with the Court of Appeal's decision to give "little weight" to the prejudice to the defendant:

> At most, the court [of appeals] recognized the possibility of "impairment of a fair trial that may well result from the absence or loss of memory of witnesses in this case." [*United States v. Loud Hawk,*] 741 F.2d [1184] at 1193 [9th Cir. 1984]. *See Barker,* 407 U.S. at 532, [92 S.Ct. at 2193]. That possibility of prejudice is not sufficient to support respondent's position that their speedy trial rights were violated. In this case, moreover, delay is a two-edged sword. It is the government that bears the burden of proving its case beyond a reasonable doubt. The passage of time may make it difficult or impossible for the Government to carry this burden.

*Loud Hawk,* 474 U.S. at 315, 106 S.Ct. at 656. *See also York v. United States,* 389 F.2d 761, 762 (9th Cir.1968) (in Sixth Amendment context, court suggested that the defendant must provide a factual record "aside from the speculations and assertions of counsel, bearing upon the reasons for the delay, how it may have affected appellant's defense"); *Simmons,* 536

F.2d at 831–32 (in Sixth Amendment context, court noted that "[c]onclusory allegations of general anxiety and depression are present in almost every criminal prosecution. We find nothing in the record which distinguishes the emotional strain experienced by Simmons from that of other criminal defendants.... We therefore conclude that such allegations ... constitute a minimal showing of prejudice").

REVERSED and REMANDED for trial.