**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Walter Donald BEAMON, Jr.,**
**Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jeffrey John McMILLIN,**
**Defendant–Appellant.**

**Nos. 92–30222, 90–30228.**

United States Court of Appeals,
Ninth Circuit.

Submitted March 5, 1993.*

Decided May 11, 1993.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P.

34(a); 9th Cir.R. 34–4.

Susan Elizabeth Reese, Reese & Goffredi, Portland, OR, for defendant-appellant Beamon.

Hap Wong, Portland, OR, for defendant-appellant McMillin.

Leslie K. Baker, Asst. U.S. Atty., Portland, OR, for plaintiff-appellee.

Before TANG, POOLE, and RYMER, Circuit Judges.

RYMER, Circuit Judge:

Walter Donald Beamon and Jeffrey John McMillin appeal their convictions following guilty pleas for attempted possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) & 846. They both argue that their convictions should be reversed because their Sixth Amendment right to a speedy trial was violated. Beamon also appeals his sentence, arguing that the district court erred in denying him a downward departure for aberrant behavior. We must decide whether a delay between indictment and arrest of 17 months in Beamon's case or 20 months in McMillin's case violates the Sixth Amendment[1] right to a speedy trial under *Doggett v. United States*, — U.S. ——, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). We have jurisdiction under 28 U.S.C. § 1291, and we affirm both convictions and Beamon's sentence.

I

In early 1990, Beamon and McMillin arranged to purchase cocaine from William Lee Caron. Caron, acting as a "middleman," arranged a meeting with Beamon, McMillin and a cocaine supplier, who in fact was an undercover Immigration and Naturalization Service agent working with Portland Police. The meeting took place on March 30, 1990, during which McMillin was to purchase one kilogram of cocaine, and Beamon one half kilogram. Instead, Beamon, McMillin, and Caron were arrested by the INS agent and Portland police officers on suspicion of state law drug violations.

Because of the amount of drugs involved, the Portland Police Department requested federal prosecution.[2] A federal indictment was returned on May 8, 1990. Beamon, however, was not arrested until October 16, 1991, over 17 months after the indictment. McMillin surrendered on January 8, 1992, 20 months after the indictment.

Portland Police Officer William Gray testified that during the 17 months between Beamon's indictment and arrest, he spent several nights trying to locate Beamon, including driving by and watching Beamon's house, which Gray said looked vacant. At one point, Gray knocked on Beamon's door, but Beamon's wife said he was at work. Gray left a message with Beamon's wife, but did not mention that there was a warrant out for his arrest. In June 1990, Gray suspended efforts to locate Beamon, apparently under the impression that United States Marshals would take over. In October 1991, however, Gray and Portland Police Officer Dirk Anderson happened to drive by Beamon's house, saw that the lights were on, and knocked on the door. Beamon answered, and was arrested.

Gray also testified about the 20 month delay in McMillin's case. He said that he had two addresses for McMillin, which he and Anderson had surveilled approximately 12 to 15 times. As with Beamon, the officers suspended efforts to locate McMillin in June 1990, again under the impression that the U.S. Marshals would take over. After the October 1991 arrest of Beamon, however, the officers called McMillin's parents to obtain his address. The parents refused, but said that they would try to convince McMillin to surrender. McMillin surrendered on January 8, 1992. It appears that McMillin, like Beamon, had been living at the same address since his original 1990 arrest on state law charges.

---

1. The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI.

2. State charges were never brought.

Beamon testified that throughout the 17 month delay he was never aware of a federal prosecution. At all times, he lived at the address listed on the warrant for his arrest. He also testified that his child, who was born April 7, 1990, one month before the federal indictment, suffered from jaundice and required special lighting in his room 12 hours a day, and that someone was home with the baby at all times during the baby's first year.

A few weeks prior to the indictment, Beamon, his then fiance, his attorney, Officers Gray and Anderson, and a state district attorney met regarding civil forfeiture proceedings arising from the March 1990 arrest. Beamon and his attorney claim that they were never told of a federal indictment while negotiating the forfeiture, or at any other time prior to the arrest. In fact, at one point during the 17 month delay, Beamon signed a return receipt from a certified FBI letter relating to the forfeiture, and met with an officer who came by in the summer of 1990 to receive title to Beamon's car.

During the 20 month delay in his case, McMillin was living and working in Portland. Though there is hearsay evidence that he was "keeping a low profile," there is no evidence that he was hiding from the police. McMillin's testimony that he was not hiding from the police, that he learned about the indictment around Christmas 1991, and that he voluntarily surrendered a few weeks later in January 1992 was uncontradicted.

Both Beamon and McMillin filed a motion to dismiss for violation of the Sixth Amendment right to a speedy trial. The motions were denied, and Beamon and McMillin then entered into plea agreements which reserved their rights to appeal the denial of their speedy trial motions.

## II

■ The denial of a motion to dismiss based upon the Sixth Amendment right to a speedy trial is reviewed de novo. *United States v. Gonzalez–Sandoval*, 894 F.2d 1043, 1050 (9th Cir.1990). The trial court's findings of fact are reviewed for clear error. *Maine v. Taylor*, 477 U.S. 131, 145, 106 S.Ct. 2440, 2450–51, 91 L.Ed.2d 110 (1986).

■ A discretionary refusal to depart downward is not reviewable, *United States v. Morales*, 972 F.2d 1007, 1010–11 (9th Cir. 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1665, 123 L.Ed.2d 283 (1993) (No. 92–7776) whereas a ruling that a particular circumstance is not a permissible basis for departure is reviewed de novo. *Id.*

## III

### A

■ "The Sixth Amendment guarantees that in all criminal prosecutions the accused shall enjoy the right to a speedy trial." *Doggett v. United States*, —— U.S. ——, ——, 112 S.Ct. 2686, 2690, 120 L.Ed.2d 520 (1992). Speedy trial challenges are subject to a four part inquiry governed by *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1971). The four factors are: "(1) whether delay before trial was uncommonly long, (2) whether the government or the criminal defendant is more to blame for that delay, (3) whether, in due course, the defendant asserted his right to a speedy trial, and (4) whether he suffered prejudice" because of the delay. *Doggett*, —— U.S. at ——, 112 S.Ct. at 2690; *United States v. Turner*, 926 F.2d 883, 889 (9th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 103, 116 L.Ed.2d 73 (1991).

■ *Doggett* breaks the first inquiry, length of delay, into two steps. —— U.S. at ——, 112 S.Ct. at 2690. To trigger a speedy trial inquiry, an accused must show that the period between indictment and trial passes a threshold point of "presumptively prejudicial" delay. *Id.* If this threshold is not met, the court does not proceed with the *Barker* factors. *Id.* If, however, the threshold showing is made, the court considers the extent to which the delay exceeds the threshold point in light of the degree of diligence by the government and acquiescence by the defendant to determine whether sufficient prejudice exists to warrant relief. *Id.* —— U.S. at ——, 112 S.Ct. at 2690, 2693–94.

■ We have no trouble concluding that Beamon and McMillin pass the threshold test. As *Doggett* notes, courts have generally found delays approaching one year to be "presumptively prejudicial," *id.* —— U.S. at

—— n. 1, 112 S.Ct. at 2691 n. 1, though some have found the line crossed at an earlier point. *See, e.g., United States v. Vassell,* 970 F.2d 1162, 1164 (2d Cir.) (suggesting that there is a general consensus of about 8 months), *cert. denied,* —— U.S. ——, 113 S.Ct. 627, 121 L.Ed.2d 559 (1992). We do not need to decide exactly when delay is "presumptively prejudicial," since the 17 and 20 month delays here are well over one year and are more than sufficient to trigger the speedy trial inquiry under *Barker.*

### B

■ We must therefore examine the reasons for delay, *Barker's* second factor. The government argues that it was diligent under the circumstances; Beamon argues that the government delayed intentionally or was at least grossly negligent. The district court found that "both defendants should have been found if a serious effort had been made to find them." A district court's determination that the government was negligent in pursuing a suspect is reviewed with considerable deference. *Doggett,* —— U.S. at ——, 112 S.Ct. at 2691. Here, the district court's finding is not clearly erroneous. The police should have found Beamon since they knew where he lived and knew his attorney from the forfeiture proceedings. There is no evidence that McMillin tried to hide from the police, or knew of the indictment; when surrendering in 1992, McMillin listed the same address as he did when arrested in 1990 by Portland police. By the same token, there is no evidence that the government acted with the specific intent to delay for tactical advantage. We therefore accept the district court's finding that the government did not act with appropriate diligence in pursuing either Beamon or McMillin.

### C

As to the third factor, the defendant's asserting his right to a speedy trial, the district court found that although both Beamon and McMillin knew the investigation was continuing, Beamon did not know about the indictment and McMillin turned himself in within a few weeks of finding out he was wanted by the police. Thus, neither can be faulted for contributing to the delay. The third factor, accordingly, favors Beamon and McMillin. *Doggett,* —— U.S. at ——, 112 S.Ct. at 2691; *United States v. Williams,* 782 F.2d 1462, 1465–66 (9th Cir.1985).

### D

■ The remaining factor is prejudice. We have already held that Beamon and McMillin suffered presumptive prejudice. *Doggett* instructs that presumptive prejudice is "part of the mix of relevant facts, and its importance increases with the length of delay." —— U.S. at ——, 112 S.Ct. at 2693. This requires us to weigh the reasons for and the extent of the delay against the evidence of actual prejudice. *Id.* —— U.S. at ——, 112 S.Ct. at 2693–94. In cases of government negligence or bad faith, the reasons for delay may well control. *Id.* —— U.S. at ——, 112 S.Ct. at 2693. In negligence cases, particularly, our concern for substantiating prejudice diminishes as delay mounts. *Id.* —— U.S. at ——, 112 S.Ct. at 2693–94. And in the absence of proof of actual prejudice, government negligence and a substantial delay will suffice to grant relief unless "the presumption of prejudice ... is [ ]either extenuated, as by the defendant's acquiescence, [ ]or persuasively rebutted" by the government. *Id.* —— U.S. at ——, 112 S.Ct. at 2694 (citation and footnotes omitted).

### 1

Beamon and McMillin argue that under *Doggett,* they need show no actual prejudice since the government's negligence in conjunction with the length of delay relieves them of that burden. We disagree.

In *United States v. Shell,* 974 F.2d 1035 (9th Cir.1992), we interpreted *Doggett* as holding that "no showing of prejudice is required when the delay is great and attributable to the government." 974 F.2d at 1036. In *Doggett,* an eight and a half year delay caused by government negligence and unaccompanied by the defendant's acquiescence was long enough so that an "affirmative proof of particularized prejudice [was] not essential." —— U.S. at ——, 112 S.Ct. at 2692, 2694. In *Shell,* a five year delay caused by government negligence created a

**1014**

"strong presumption" of prejudice which we held the government did not persuasively rebut by simply suggesting that most of the essential witnesses and documentary evidence is still available. 974 F.2d at 1036.

Measured by *Shell* and *Doggett*, the delays in this case are not "great." Seventeen and 20 months are only five to eight months longer than the one year benchmark which triggers the speedy trial inquiry under *Barker v. Wingo. See Doggett*, —— U.S. at —— n. 1, 112 S.Ct. at 2691 n. 1. This is not close to the delay of eight times the one year benchmark in *Doggett*, or to the delay of five times that point in *Shell*.

Although the government did not pursue Beamon and McMillin with due diligence, if the delay in this case—only a few months longer than the minimum—were sufficient as a matter of law to relieve the defendant of the burden of coming forward with any showing of actual prejudice, the presumption of prejudice would be virtually irrebuttable. It is clear from *Doggett's* balancing approach that the Court did not intend such a bright line rule. Therefore, we must consider the amount of delay in relation to particularized prejudice.

#### 2

■ Traditionally, actual prejudice can be shown in three ways: oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused's defense will be impaired. *Doggett*, —— U.S. at ——, 112 S.Ct. at 2692. It is undisputed that neither Beamon nor McMillin suffered oppressive pretrial incarceration, and the district court found no evidence that they suffered anxiety and concern, except that they apparently thought they would not be prosecuted.

Thus, in this case we need to consider how much the defense was actually impaired, recognizing that prejudice of this sort cannot be proved easily. *Doggett*, —— U.S. at ——, ——, 112 S.Ct. at 2692–93. We must then balance that impairment with the degree of the government's dalliance.

■ Beamon and McMillin argue that their defense was prejudiced because they had a better chance of negotiating a favor-able resolution of the case before the time they were arrested. McMillin suggests that he could have agreed to cooperate but that a defendant is most able to do so while contacts are fresh; Beamon claims he might have been able to identify other persons involved in the same drug transaction and perhaps work with the prosecutors to keep the case within the state court system thereby preserving a more favorable set of sentencing options. Such possibilities are not, however, material. A weakened plea bargaining position is not the type of prejudice protected by the Sixth Amendment. In *United States v. Turner*, 926 F.2d at 889, the defendants argued that they were prejudiced by a post-indictment delay since a superseding indictment was filed alleging more serious crimes and leading to a longer sentence. The court found that "[t]his is not the sort of prejudice we recognize as a Sixth Amendment violation." *Id.* Similarly, a diminished plea bargaining position does not amount to impairment of defense. Whether the prosecutor would have agreed to a lower sentence, or the court would have approved it, without the delay is speculation. For this reason, there is only the possibility of prejudice, and that is insufficient in the Sixth Amendment context. *United States v. Sears, Roebuck and Co.*, 877 F.2d 734, 740 (9th Cir.1989). Beamon and McMillin suggest no other bases of actual prejudice.

#### E

On balance, we cannot say that the government's negligence, which caused a delay less than two times as long as the threshold, in light of the presumption of prejudice and the tenuous showing of actual prejudice, entitles Beamon and McMillin to relief. The delay of 17 to 20 months was too long, but not as long as other delays which have been upheld. *See, e.g., United States v. Williams*, 782 F.2d 1462, 1465–66 (9th Cir.1985) (39 month delay with no government negligence and minimal showing of prejudice does not violate Sixth Amendment). The government was negligent, but this negligence is weighted less than deliberate delay. *See United States v. Simmons*, 536 F.2d 827, 831 (9th Cir.), *cert. denied*, 429 U.S. 854, 97 S.Ct. 148, 50

L.Ed.2d 130 (1976). In addition, neither Beamon nor McMillin has shown any actual prejudice. *Id.* (showing of minimal prejudice is insufficient to establish a Sixth Amendment violation); *Sears, Roebuck,* 877 F.2d at 740 (defendant "did not make a showing of prejudice which could justify dismissal on Sixth Amendment grounds"); *United States v. Valentine,* 783 F.2d 1413, 1417–18 (9th Cir.1986) (six month delay with minimal prejudice, *i.e.,* one month incarceration and some destroyed evidence, is insufficient); *see also United States v. Loud Hawk,* 474 U.S. 302, 315, 106 S.Ct. 648, 656, 88 L.Ed.2d 640 (1986) ("possibility of prejudice is not sufficient to support" violation of speedy trial rights). Accordingly, while the government's negligence caused a delay long enough to trigger a speedy trial inquiry under *Barker,* the delay of 17 to 20 months is not sufficient to excuse the defendants altogether from any showing of actual prejudice. Their only showing, the possibility of a better plea bargain, is speculative and therefore not persuasive. On these facts, we conclude that Beamon and McMillin are not entitled to relief.

### IV

■ Beamon also argues that the district court erred in failing to depart downward based on aberrant behavior. The district court stated that,

> I don't believe I have authority to depart downward because of an aberrational act in this case. I think the case is clearly distinguishable from *Takai* and any other cases that touch on this point. It's distinguishable from the McMillin case in which I allowed a departure this morning.

The *Takai* case which the court referred to is *United States v. Takai,* 941 F.2d 738, 743 (9th Cir.1991), which recognized that a downward departure is justified when a defendant's conduct constitutes "single acts of aberrant behavior." By distinguishing *Takai,* the district court recognized that it had authority to depart, but that the facts did not warrant such a departure in this case. In other words, the district court made a discretionary decision not to depart downward based on aberrant behavior. Such a decision

is not reviewable. *Morales,* 972 F.2d at 1011.

AFFIRMED.