UNITED STATES of America,
Appellant,

v.

Michael DIACOLIOS,
Defendant–Appellee.

No. 350, Docket 87–1320.

United States Court of Appeals,
Second Circuit.

Argued Nov. 16, 1987.

Decided Jan. 15, 1988.

Bruce A. Green, Asst. U.S. Atty. (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Aaron R. Marcu, Asst. U.S. Atty., of counsel), for appellant.

Felix T. Gilroy, Staten Island, N.Y., for defendant-appellee.

Before KEARSE and ALTIMARI, Circuit Judges, and LASKER, District Judge.[*]

ALTIMARI, Circuit Judge:

The government appeals, pursuant to 18 U.S.C. § 3731, from an order dismissing an indictment against defendant-appellee Michael Diacolios entered in the United States District Court for the Southern District of New York (Haight, J.). The indictment charged, *inter alia*, that defendant-appellee engaged in a conspiracy to defraud the United States by filing false claims for federal income tax refunds, in violation of 18 U.S.C. § 286, and engaged in federal mail fraud in connection with the filing of false claims for New York State income tax refunds, in violation of 18 U.S.C. § 1341.

In his motion to dismiss the indictment pursuant to Fed.R.Crim.P. 48(b), defendant invoked his sixth amendment right to a speedy trial, arguing that there was unnecessary and inexcusable delay in bringing him to trial. Defendant never raised any violation of his rights under the provisions of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, but instead maintained that the government deprived him of his constitutional right to a speedy trial by failing to exercise due diligence in seeking his timely return to the United States from Greece. Relying on our prior decision in *United States v. Salzmann,* 548 F.2d 395 (2d Cir. 1976), the district court held that the government's failure to seek extradition of defendant constituted a lack of due diligence and, therefore, dismissed the indictment. Because we disagree with the district court's reading of *Salzmann,* we reverse and remand for the purpose of reinstating the indictment.

## BACKGROUND

On February 3, 1984, an arrest warrant was issued for Michael Diacolios based upon a complaint, filed the same day, which alleged that on five occasions between February and April 1982, Diacolios mailed "short-form" tax returns to the Internal Revenue Service regional office in Holtsville, New York. The complaint alleged that the tax returns claimed refunds for the year 1981 on behalf of fictitious persons listed at the address of defendant's restaurant in Manhattan. Accompanying each of the tax returns was a W-2 wage statement which purported to show that federal income taxes had been withheld by various employers, some of whom also allegedly were fictitious. Although no federal refund checks were ever issued in connection with the filing of these tax returns, according to the government, defendant also falsified New York State income tax returns which resulted in defendant receiving five state refund checks. The complaint further alleged that defendant and his brother cashed the checks.

Defendant was indicted on June 29, 1984 and charged with conspiracy to defraud the federal government and with mail fraud. Diacolios never appeared to answer the charges because he had left the country before the arrest warrant was issued. On July 12, 1984, defendant through his attorney did, however, enter a plea of not guilty

* The Honorable Morris E. Lasker, *Senior Judge,* United States District Court for the Southern District of New York, sitting by designation.

before then Judge Sofaer. At a pretrial conference on August 27, 1984, the district court considered various motions filed by defendant's attorney as well as a letter from Diacolios to his attorney which alleged that Diacolios could not afford to return to the United States. The government indicated at that time that it would consider paying for Diacolios' airfare from Greece if he in fact was willing to return to the United States.

Diacolios instead pursued efforts through his attorney to be tried *in absentia*. On March 5, 1985, defendant's attorney requested that the case proceed to trial. The district court denied the request, noting that Diacolios could not be tried *in absentia* because he had never personally appeared to respond to the charges against him. *See United States v. Tortora*, 464 F.2d 1202, 1209 (2d Cir.), *cert. denied*, 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972). At that time, the government informed the court that it believed Diacolios was not subject to extradition from Greece since he was a Greek national. The government then moved to have the trial date adjourned indefinitely, and the district court granted the government's motion.

On June 14, 1985, the case was reassigned to Judge Haight, and thereafter on February 19, 1986, defendant moved to dismiss the indictment for nonprosecution under the speedy trial clause of the sixth amendment. In opposition to defendant's motion to dismiss, the government filed various affidavits which set forth the history of the case and which indicated that, at the March 5, 1985 pretrial conference, the government had stated its belief that defendant was not subject to extradition. According to the government, this conclusion was confirmed after further research by an assistant United States Attorney who contacted an official at the Department of Justice, Office of International Affairs and was advised that, because defendant was a Greek citizen, he was not subject to extradition for two reasons. First, pursuant to the terms of the extradition treaty between the United States and Greece, "neither of the [parties] shall be bound to deliver up its own citizens" (Extradition Treaty, Nov. 1, 1932, United States–Greece, art. VIII, 47 Stat. 2185, 2191, T.S. No. 855); and second, Diacolios was not subject to extradition as a matter of comity because Greece does not permit extradition of its own nationals apart from the extradition treaty. The Justice Department official further explained that "it is not generally the policy of the United States to request surrender as an act of comity."

In a memorandum decision and order dated September 8, 1986, Judge Haight considered Diacolios' motion to dismiss the indictment and rejected defendant's initial contention that the government failed to offer financial assistance to enable defendant to return to the United States. Judge Haight found that Diacolios had been on notice since August 27, 1984—the date of the initial pretrial conference—of the government's willingness to provide any necessary financial assistance to secure Diacolios' presence at trial. The district court indicated, however, that defendant never agreed to return to face the charges against him. The court, therefore, viewed defendant's inaction in this regard as a "deliberate attempt [by Diacolios] to prevent clear resolution of the matter" and not as a failure of the government to bring him to trial.

The district court was unable on the existing record, however, to resolve Diacolios' other contention that the government failed to exercise due diligence in seeking his return from Greece. In the court's view, it was not sufficient for the government simply to assert that Diacolios was not subject to extradition by treaty. Specifically, Judge Haight found

> the record before [him] ... devoid of any evidence that a policy decision was made not to pursue diplomatic efforts outside the extradition treaty....

Accordingly, the district court ordered additional affidavits from government officials with personal knowledge of any "policy decisions made by the Government not to request Greece to surrender Diacolios."

The government responded to the court's request by filing, among other things, the

declaration of the Justice Department official who previously had been consulted concerning whether Diacolios was extraditable. The official averred that there was no feasible way to secure Diacolios' return to the United States, and that any request to the government of Greece to surrender the defendant would have been futile.

After considering the supplemental affidavits filed by the government, the district court, in a decision dated June 15, 1987, addressed the defendant's motion to dismiss the indictment on speedy trial grounds. Judge Haight recognized that it was the policy of the United States "generally" not to request surrender of a fugitive as an act of comity. Nevertheless, the court found no evidence to suggest that the government "consciously decided to apply the 'general' rule in this case." Having concluded, therefore, in light of *Salzmann*, that the government failed to exercise due diligence in seeking defendant's return to the United States, the district court granted defendant's motion to dismiss the indictment.

## DISCUSSION

The sixth amendment provides in part that "in all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial." The principal purpose of the speedy trial clause is to protect the accused from unnecessary delay on the part of the government in bringing the accused to trial. *See United States v. MacDonald*, 456 U.S. 1, 8, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696 (1982); *Barker v. Wingo*, 407 U.S. 514, 531, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). As the district court recognized, the issue to be decided in the instant case is whether the government satisfied its "constitutional duty to make a diligent good faith effort" to bring Diacolios to trial without unnecessary delay. *See Smith v. Hooey*, 393 U.S. 374, 383, 89 S.Ct. 575, 579, 21 L.Ed.2d 607 (1969).

We begin, therefore, by examining the government's duty to exercise due diligence in a situation where, as in this case, the defendant is a fugitive residing in a foreign country, and no right of extradition exists under the treaty with that country to secure his return. Defendant argues that the government's failure to negotiate his return to the United States through diplomatic efforts outside the extradition treaty was not a "product of choice, [but] inertia." *Cf. United States v. Salzmann*, 548 F.2d 395, 403 (2d Cir.1976) (interpreting circuit's former speedy trial rules). The government responds by observing that it believed any request directed to the Greek government outside the terms of the extradition treaty to surrender Diacolios would have been futile. In view of the futility of such a request, the government contends that it was not required, as a matter of due diligence, to take extraordinary diplomatic action to obtain defendant's return to the United States.

In defining the contours of the sixth amendment's due diligence requirement in this case, our prior decision in *United States v. Salzmann* is instructive. In *Salzmann*, we affirmed the dismissal of an indictment for failure by the government to exercise due diligence to obtain the defendant's presence for trial. The defendant in that case was a Vietnam war draft evader living in Israel who was indicted for violations of the Selective Service Act. He moved to dismiss the indictment based upon the speedy trial rules then in effect in this circuit. The district court granted the motion, and we affirmed, but solely on the ground that, by failing to respond to his "intimation" that a reason for his refusal to return to the United States was his financial inability to do so, the government was not duly diligent in attempting to obtain his presence for trial.

Although this court did not have occasion in *Salzmann* to determine whether the government should have prevailed upon Israel to deport the defendant, Judge Kaufman in his majority opinion in *Salzmann* did express in *dicta* the court's sense of what diligence would be required of the government in seeking the return of a fugitive who was not subject to extradition by treaty. Specifically, the majority indicated that a

*considered refusal* on the part of the Government to seek return of selective service offenders [would not violate] standards of due diligence ... in those instances where no right of extradition exists by treaty.... Where the United States must rely solely on comity ..., diplomatic factors may properly be taken into account in determining what diligence is due. We are unpersuaded that under these circumstances, the United States was obliged to seek Salzmann's return by means dehors the extradition treaty....

548 F.2d at 402 (emphasis added).

In a concurring opinion, Judge Feinberg agreed with the majority that the government's failure to offer Salzmann financial assistance necessitated the dismissal of the indictment. Judge Feinberg also concluded, however, that because the government "did nothing" to seek defendant's forcible return to this country, it failed to demonstrate the necessary diligence in order to avoid dismissal of the indictment. Judge Feinberg thus would have required the government at least to pursue efforts through the Department of State to seek the return of the defendant.

■ Relying on Judge Feinberg's concurring opinion, Diacolios argues that the government had an obligation to inquire of the State Department whether or not a policy decision was made concerning the extradition of Greek nationals. The district court appeared to accept this argument in reflecting its dissatisfaction with the assistant United States Attorney's explanation for declining to take steps to obtain Diacolios' extradition. We agree with Judge Haight that the mere assertion of a "general" policy not to seek extradition is insufficient by itself to satisfy the government's obligation of due diligence. Nevertheless, we believe that subsequent information provided to the district court by the government confirmed the existence of a considered policy decision regarding extradition of Greek nationals. Consequently, we do not read *Salzmann* to require in this case anything more of the government than to determine whether Diacolios was subject to extradition in light of the State Department's "general" policy.

■ The record is clear that at least since 1953, the United States has had a policy of not requesting extradition apart from the treaty with Greece primarily because Greece, like all European countries, does not permit extradition as an act of comity. *See* 6 M. Whiteman, *Digest of International Law* 736–37 (1968). In addition, the futility of such a request becomes apparent when the government of the asylum country is informed that the United States would be unable to respond favorably to a similar demand for extradition by that country. " 'Such a statement usually has the effect of causing the requested Government to decline surrender.' " *Id.* at 787 (quoting letter from the Acting Secretary of State (Smith) to Lester Sandles, Apr. 23, 1953, Ms. Department of State, file 254.1115 Bender, Ludwig (4–253)).

■ Notwithstanding the "general" policy of the United States not to request extradition as a matter of comity, Diacolios would require the government to consider making an exception to the general rule in his case. While it is true that United States policy does not "preclude requests for surrender not based on the extradition treaty," *Salzmann*, 548 F.2d at 403, we think that compelling the government to consider making such an exception in every case would vitiate the policy and render meaningless "our traditional deference to the judgment of the executive department in matters of foreign policy." *Id.; see First Nat'l City Bank v. Banco Nacional de Cuba,* 406 U.S. 759, 767, 92 S.Ct. 1808, 1813, 32 L.Ed.2d 466 (1972). Indeed, we are aware of no case that holds that a formal request for extradition must be made before due diligence can be found to have existed. *See United States v. Walton,* 814 F.2d 376, 379 (7th Cir.1987) (analyzing due diligence requirement under Speedy Trial Act). Due diligence surely does not require the government to pursue that which is futile. *United States v. Bagga,* 782 F.2d 1541, 1543 (11th Cir.1986).

Given the deference we must give to a coordinate branch of government, particu-

larly to the executive branch in matters of foreign policy, we therefore hold that the speedy trial clause does not prevent the government from adhering to its general policy not to seek extradition as a matter of comity. As the Ninth Circuit has recognized,

> [w]e do not think that it would be proper for us to adopt a rule ... that would, in substance, require the Attorney General or his agents to embark on [negotiations for the release to this country of a defendant not subject to extradition by treaty], or require [the Attorney General] to try to persuade the Department of State to do so.

*United States v. Hooker*, 607 F.2d 286, 289 (9th Cir.1979), *cert. denied*, 445 U.S. 905, 100 S.Ct. 1083, 63 L.Ed.2d 321 (1980); *see id.* at 290 (citing *dicta* from *Salzmann* with approval).

## CONCLUSION

Because the government's failure to obtain defendant's extradition was the result of reliance upon United States policy not to seek extradition outside the extradition treaty with Greece, we conclude that the government has satisfied its burden of demonstrating due diligence in seeking defendant's return for trial without unnecessary delay. The judgment of the district court granting the defendant's motion to dismiss the indictment therefore is reversed, and the case is remanded to the district court with instructions to reinstate the indictment. We recognize of course that by reinstating the indictment the government still is not in a position to try Diacolios unless he returns to the United States. We should add, however, that if and when defendant expresses a willingness to surrender himself to appropriate United States authorities in Greece, the government will continue to be under an obligation to provide transportation to the United States at government expense if Diacolios' financial circumstances so warrant.

Reversed and remanded.