**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Edward George MITCHELL,**
**Defendant–Appellant.**

**No. 91–1622.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 7, 1992.
Decided March 10, 1992.

Eric J. Klumb, R. Jeffrey Wagner (argued), Asst. U.S. Attys., Office of the U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Dennis P. Coffey (argued), Coffey, Coffey & Geraghty, Milwaukee, Wis., for defendant-appellant.

Before POSNER and EASTERBROOK, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

Edward George Mitchell, a United States citizen who was extradited from Colombia, was convicted after a jury trial of arranging for the delivery of two kilograms of cocaine to undercover agents in Wisconsin. *See* 18 U.S.C. § 2, 21 U.S.C. § 841(a)(1) (possession with intent to distribute); 21 U.S.C. § 846 (conspiracy to distribute). Mitchell was indicted on June 14, 1983, but not arraigned until July 18, 1990. Pretrial, Mitchell moved to dismiss the indictment on three grounds related to the post-indictment delay in bringing him to trial. He appeals the district court's denial of his pretrial motions as well as the district court's refusal to provide the jury an instruction defining the term "reasonable doubt." We affirm.

## I. FACTS

Mitchell's 1983 indictment at issue in this appeal was not his first experience with the criminal justice system. In August 1981, Mitchell was convicted of various drug charges and received a four-year sentence from a federal court in Texas. After serving approximately eighteen months of that sentence at the LaTuna Federal Correctional Institution in New Mexico, Mitchell was transferred to a halfway house in Texas in March 1983. While at the halfway house, Mitchell apparently arranged a cocaine transaction in Milwaukee, Wisconsin with Richard Peterson, whom Mitchell had met at LaTuna. Unfortunately for Mitchell, after leaving LaTuna Peterson became an informant for law enforcement authorities in the Milwaukee area. As a result of Peterson's undercover operations, a federal magistrate in Wisconsin issued an arrest warrant for Mitchell on June 7, 1983 for arranging the delivery of two kilograms of cocaine. When federal marshals attempted to arrest Mitchell at the halfway house

later that day, however, they discovered that he had escaped.

Thereafter, the Milwaukee Drug Enforcement Administration office (DEA) took routine measures to locate and apprehend Mitchell. His exact whereabouts remained unknown until approximately July 1986, although the DEA believed that Mitchell had fled to Colombia (the home of his wife) and may have been hiding in Santa Marta. *See* Government's Pretrial Motions Response App. 1–8. On July 31, 1986, Mitchell was arrested by DEA special agents and Colombian law enforcement officers in Santa Marta for possession of false Colombian immigration documents in the name of Phillip Goodman. *Id.* at App. 9. After his arrest, Mitchell admitted to a DEA agent that he had used Goodman's name to conceal his true identity, that he was a fugitive "wanted" in the United States, that he was "tired of running," and that he could probably bribe his way out of jail in Colombia. *Id.* Furthermore, local authorities also learned that he was the subject of an outstanding Colombian arrest warrant for smuggling contraband goods. He was incarcerated in the Santa Marta jail and his case was turned over to the Colombian Customs Service. *Id.*

Concerned that Mitchell would obtain a release from jail through bribery, the DEA pursued the possibility of having Mitchell deported to face charges in the United States. During this time, Colombia was in the midst of internal battles over extradition procedures.[1] Although a window of opportunity opened regarding extradition from Colombia on December 14, 1986,[2] the United States did not succeed in extraditing Mitchell before that window closed on June 25, 1987.[3] The United States requested a provisional detention of Mitchell on April 20, 1987 pending a formal extradition request, but that formal request apparently was never made. Mitchell was released from the Colombian jail on October 14, 1988.[4]

Extradition did not become a possibility again until August 10, 1989 when a decree was issued by the Colombian President authorizing extradition without a treaty.[5] On January 22, 1990 Mitchell was again placed in custody in Colombia, presumably at the United States' behest, although the United States did not issue a formal request for provisional detention until January 29, 1990. A formal request for extradition was then filed by the United States on March 15, 1990; a request that Mitchell's extradition be accelerated was filed on April 30, 1990. Finally, on July 17, 1990, Mitchell left Colombia and was arraigned before the district court the following day.

Mitchell filed motions to dismiss his indictment on three separate, though related, grounds. First, Mitchell claimed that the district court lacked personal jurisdiction due to the post-indictment delay in bringing

---

1. In 1982, a new extradition treaty between the United States and Colombia took effect which arguably would have required Colombia to surrender Mitchell to the United States. *See* Extradition Treaty with the Republic of Colombia, S. Treaty Doc. No. 97, 97th Cong., 1st Sess. (1981) (signed Sept. 14, 1979). The President of Colombia, however, refused to honor the treaty as a matter of "executive discretion." *See* Mark A. Sherman, *United States International Drug Control Policy, Extradition and the Rule of Law in Colombia,* 15 Nova L.Rev. 661, 667–69 (1991). Although the President changed his position in 1984, the Colombian Supreme Court declared that the Colombian law approving the extradition treaty was "unenforceable because of a formal defect" on December 12, 1986. *See id.* at 680.

2. On this date, the Colombian President signed a new law purporting to approve the law which had been struck down by the Supreme Court

two days earlier. *See* Exhibits of Defendant–Appellant 37–38.

3. On this date, the Colombian Supreme Court again declared the law approving the extradition treaty to be unenforceable. *Id.* at 37–43.

4. The record leaves unclear the precise reason why Mitchell was released at this time. We note, however, that Colombia was not obligated, according to the treaty under which the United States sought extradition, to hold Mitchell for more than sixty days after provisional detention in the absence of a formal extradition request. *See* Extradition Treaty with the Republic of Colombia, Art. 11(3), S. Treaty Doc. No. 97, 97th Cong., 1st Sess. (1981).

5. Decree No. 1860, Republic of Colombia (Aug. 10, 1989). *See* Defendant–Appellant's Exhibits at 51.

him to trial. Second, Mitchell claimed that the delay and his conditions of confinement were so "shocking" and "outrageous" as to warrant dismissal on due process grounds. Third, Mitchell claimed that the prosecution should be abated because his extradition violated Colombian and international law. A magistrate judge recommended that Mitchell's pretrial motions be denied, and the district court adopted that recommendation in a November 17, 1990 order. Thereafter, Mitchell was tried and convicted by a jury on both counts of the 1983 indictment, and was sentenced to concurrent thirty-year prison terms. This appeal followed.

## II. DISCUSSION

■ Mitchell's first argument is that the district court erred by denying his request that the jury be instructed on the definition of "reasonable doubt." This argument, however, is foreclosed by a long line of precedent in this circuit. We have consistently disapproved of instructions attempting to define "reasonable doubt" and have held that the refusal to instruct on the meaning of "reasonable doubt," even where an acceptable instruction has been offered, is neither prejudicial nor reversible error. See *United States v. Hall*, 854 F.2d 1036, 1037 (7th Cir.1988); *United States v. Marquardt*, 786 F.2d 771, 784–85 (7th Cir. 1986); *United States v. Lawson*, 507 F.2d 433, 443 (7th Cir.1974), *cert. denied*, 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975). The Supreme Court has stated that attempts at defining this term usually do not succeed in making its meaning any clearer to the jury. See *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 138, 99 L.Ed. 150 (1954). Moreover, although Mitchell requested the Ninth Circuit's pattern jury instruction on reasonable doubt, that circuit has recently vested the decision of whether to give this instruction in the sound discretion of the trial court judge. See *United States v. Nolasco*, 926 F.2d 869 (9th Cir.1991) (en banc), *cert. denied*, —— U.S. ——, 112 S.Ct. 111, 116 L.Ed.2d 80 (1991). Thus, the district court did not err in declining to provide the jury a definition of "reasonable doubt," and to the extent

that Mitchell asks us to upset our prior holdings on this issue, we decline to do so.

Mitchell next argues that the district court erred in denying his pretrial motions seeking to abate his prosecution. He advances two principal claims in this regard. First, Mitchell claims that the district court erred in not dismissing his indictment for lack of personal jurisdiction due to the post-indictment delay in bringing him to trial (*Speedy Trial Claim*). Second, he claims that the district court erred in not dismissing his indictment because he was illegally removed from Colombia in violation of his due process rights as well as international and Colombian law (*Illegal Removal Claim*).

### A. Speedy Trial Claim.

■ Mitchell contends that his indictment should have been dismissed because of the delay in bringing him to trial. Under the sixth amendment, criminal defendants have a right to a speedy trial. The government has a constitutional duty to make a diligent, good faith effort to bring a defendant to trial promptly. *Smith v. Hooey*, 393 U.S. 374, 383, 89 S.Ct. 575, 579, 21 L.Ed.2d 607 (1969). In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court identified four factors to be considered in deciding whether a defendant's right to a speedy trial has been violated: (1) the length of delay between the defendant's indictment and trial, (2) the reason for the delay, (3) the timeliness of the defendant's assertion of right, and (4) the prejudice the defendant suffered due to the delay. *Id.* at 530, 92 S.Ct. at 2192. The district court employed these factors and decided on balance that Mitchell's right to a speedy trial had not been violated. We agree.

As to the first factor, the government wisely concedes that the seven-year delay between Mitchell's indictment and trial is presumptively prejudicial, requiring further inquiry into the other three factors. Brief of Plaintiff–Appellee 7; *see United States v. Loud Hawk*, 474 U.S. 302, 314, 106 S.Ct. 648, 655, 88 L.Ed.2d 640 (1986)

(90–month delay presumptively prejudicial); *United States v. Deleon,* 710 F.2d 1218, 1220 (7th Cir.1983) (44–month delay presumptively prejudicial).

The second factor, however, cuts sharply against Mitchell. "A defendant's claim that the government violated [his] right to a speedy trial is seriously undermined when the defendant, and not the government, is the cause of the delay." *United States v. Blanco,* 861 F.2d 773, 778 (2d Cir.1988) (citations omitted). Mitchell's initial decision to flee from the halfway house to Colombia is the root cause of the long delay between his indictment and trial. While Colombia's internal battles over extradition procedures contributed to the delay between Mitchell's indictment and trial in the United States, the district court correctly noted that only sixty days of Mitchell's first incarceration could be attributed to the United States. This is because the treaty under which Mitchell was provisionally arrested provides that if the government seeking extradition does not file a formal request within sixty days of the defendant's arrest, the provisional detention shall be terminated. *See* Extradition Treaty with the Republic of Colombia, Art. 11(3), S. Treaty Doc. No. 97, 97th Cong., 1st Sess. (1981). Moreover, it appears from the record (and Mitchell does not dispute the point) that Mitchell was incarcerated in Colombia on Colombian charges concurrently with any incarceration attributable to the United States.

■ Furthermore, much of the delay between Mitchell's release from custody in October 1988 and his re-arrest in January 1990 is due to the fact that extradition from Colombia was not possible during that time. The government is not duty-bound to pursue futile legal gestures to return the defendant for trial. *United States v. Walton,* 814 F.2d 376, 380 (7th Cir.1987). After Mitchell was rearrested, the government filed a formal request for extradition within sixty days and then later requested accelerated extradition. This effort is sufficient to establish due diligence and good faith on the part of the government in obtaining Mitchell for trial. In sum, Mitchell's fugitive status in Colombia, including his use of a false name there, is the principal reason for the delay in bringing him to trial. Thus, the second factor of the *Barker* analysis weighs heavily against Mitchell.

■ As to the third *Barker* factor, which considers the timeliness of Mitchell's assertion of his right to a speedy trial, Mitchell is in trouble here as well. He made no attempt to demand a trial, to waive extradition, or to otherwise seek to return to the United States for trial. His first assertion of his right to a speedy trial was in his pretrial motions. The only hint in the record of any reluctance on Mitchell's part to remain a fugitive was that he told a DEA agent that he was "tired of running" when he was first arrested in 1986. Standing alone, this comment is insufficient to establish that Mitchell asserted his right to a speedy trial; Mitchell does not seriously argue otherwise. This renders this third factor a negative for Mitchell. *See United States v. Deleon,* 710 F.2d 1218, 1222 (7th Cir.1983).

Finally, as to the fourth factor, prejudice, *Barker* identified three interests protected by the speedy trial right: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize the anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193. Mitchell does not argue that the second and third factors apply here, but contends that his pretrial incarceration was oppressive and was caused by the United States' delay. While we might agree that the conditions under which Mitchell was confined in Colombia were inferior, we have already noted that Mitchell's presence in Colombia was attributable to no one but himself. Thus, we are unpersuaded by Mitchell's arguments that he was prejudiced by this incarceration. The fact that Mitchell was arguably incarcerated on local charges further undermines his claim of prejudice from his incarceration in Colombia. Consequently, *Barker*'s prejudice factor weighs against Mitchell as well.

In sum, with all of *Barker's* factors weighing against Mitchell other than the length of the delay itself, we conclude that the district court properly rejected Mitchell's speedy trial claim.

### B. Illegal Removal.

■ Mitchell next argues that his removal from Colombia was illegal in that it violated Colombian and international law and offended "the canons of decency and fairness which American notions of justice hold dear." Brief of Defendant–Appellant 23. He asks that we hold that the district court erred in not dismissing his case on the basis of illegal removal and reverse his conviction. We decline to do so.

Although Mitchell's brief is murky on this point, he seems to contend that the manner in which the United States brought him to trial violated his due process rights and thus requires that his prosecution be abated. The manner in which Mitchell was brought to trial, however, does not affect the ability of the government to try him. The Supreme Court has upheld this proposition for over 100 years, refusing to apply an exclusionary rule to the body of the defendant. *See Frisbie v. Collins,* 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952) and *Ker v. Illinois,* 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886) (collectively, the "*Ker–Frisbie* doctrine"); *see also INS v. Lopez–Mendoza,* 468 U.S. 1032, 1039–40, 104 S.Ct. 3479, 3483–84, 82 L.Ed.2d 778 (1984); *Matta–Ballesteros v. Henman,* 896 F.2d 255, 260–61 (7th Cir.), *cert. denied,* ── U.S. ──, 111 S.Ct. 209, 112 L.Ed.2d 169 (1990). Although the Second Circuit recognized an "outrageous conduct" or "shock-the-conscience" exception to the *Ker–Frisbie* doctrine in *United States v. Toscanino,* 500 F.2d 267 (2d Cir. 1974), we have declined to follow the exclusionary rule grounds of *Toscanino* and have questioned its continuing constitution-

al vitality. *Matta–Ballesteros,* 896 F.2d at 262–63. The district court properly refused to apply an exception to the *Ker–Frisbie* doctrine in Mitchell's case, especially in light of Mitchell's own statement that he "is not claiming that the United States Government or its agents subjected him to physical torture or even abduction." Brief of Defendant–Appellant 23. Therefore, we affirm the district court's denial of Mitchell's motion to dismiss to the extent that it sought an exception to the long-standing *Ker–Frisbie* doctrine.[6]

■ Furthermore, to the extent that Mitchell alleges that his due process rights have been violated by this pretrial detention and conditions thereof, his argument is again unpersuasive. The stumbling block for Mitchell is that the pretrial detention he is complaining about occurred in Colombia at the hands of the Colombian government. Mitchell does not argue that once he was extradited to the United States his pretrial detention violated his rights. Therefore, any pretrial injury was inflicted by Colombia, not by the United States. Moreover, we have previously noted that "the remedy ... for violations of the due process clause during pre-trial detention is not the divestiture of jurisdiction, but rather an injunction or money damages." *Matta–Ballesteros,* 896 F.2d at 261 n. 7, citing *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

■ Last, Mitchell argues that his removal from Colombia violated Colombian and international law and that the district court erred in not abating his prosecution on that basis. Mitchell was returned to the United States for trial pursuant to an executive order of Colombia. Because Mitchell does not argue that his extradition violated the executive order or any treaty, we need not decide whether he would have standing

---

**6.** Whether this court should adopt a due process "shock-the-conscience" test is not a question that needs to be reached in this case. Even were we to adopt such a test, because of Mitchell's concession that the government did not torture or even abduct him (confirmed by our own review of the record), the conduct of the government in this case clearly is not comparable to official

acts of torture, brutality or similar outrageous conduct present in cases where conduct was found to shock the conscience. *See, e.g., United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *Irvine v. California,* 347 U.S. 128, 133, 74 S.Ct. 381, 383, 98 L.Ed. 561 (1954); *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952).

to contest such a violation. *See Matta–Ballesteros*, 896 F.2d at 259. ("It is well established that individuals have no standing to challenge violations of international treaties in the absence of a protest by the sovereigns involved."). Mitchell argues instead that the Colombian executive order violates principles of separation of powers because the Colombian legislature did not approve the order. As Mitchell concedes, however, the Republic of Colombia has not protested his removal: "Colombia evidently acceded to the request of the United States for the extradition of [Mitchell]. No protest by Colombia has been discovered by [Mitchell]." Brief of Defendant–Appellant 21.[7] We need not reach the merits of Mitchell's separation-of-powers claim in the absence of a protest from Colombia, because the remedy Mitchell seeks, divestiture of the district court's power to try him, is foreclosed by the long-standing *Ker–Frisbie* doctrine. Thus, Mitchell's illegal removal claim premised on a violation of international or Colombian law must fail as well.

### III.

In sum, we find no error in the district court's denial of Mitchell's pretrial motions seeking to dismiss his indictment or in its refusal to provide the jury an instruction on the definition of "reasonable doubt." Accordingly, Mitchell's conviction is AFFIRMED.

---

7. We note that in *United States v. Verdugo–Urquidez*, 939 F.2d 1341 (9th Cir.1991), the Ninth Circuit recently held that when the United States forcibly removes an individual from another nation in violation of an extradition treaty between the United States and that other nation, and when the other nation formally protests that violation, the defendant may successfully interpose an objection to the court's exercise of jurisdiction over his person. In *Verdugo–Urquidez*, however, Mexico had lodged a formal complaint regarding the defendant's removal. As Colombia has made no such complaint, formal or otherwise, we find *Verdugo–Urquidez* easily distinguishable and therefore express no view as to the merits of that decision. Furthermore, we decline to consider *Verdugo–Urquidez* for another reason: the parties did not bring the case to our attention in their briefs or through a notification of supplemental authority. *See* Fed. Rule App. P. 28(g). A petition for certiorari was filed in *Verdugo–Urquidez* on October 21, 1991. *See* 60 U.S.L.W. 3376, 3380 (U.S. Nov. 19, 1991); *see also United States v. Alvarez–Machain*, 946 F.2d 1466 (9th Cir.1991) (companion case to *Verdugo–Urquidez* and decided on its authority), *cert. granted,* —— U.S. ——, 112 S.Ct. 857, 116 L.Ed.2d 766 (1992).