**UNITED STATES of America, Plaintiff,**

v.

**William PACKER, Defendant.**

No. CR 87–571 (D) SVW.

United States District Court,
C.D. California.

March 24, 1994.

Lisa Lench, Asst. U.S. Atty., Narcotics Section, U.S. Atty.'s Office, Los Angeles, CA, for plaintiff.

Dean R. Gits, Overland & Gits, Santa Monica, CA, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR VIOLATION OF RIGHT TO SPEEDY TRIAL

WILSON, District Judge.

Defendant William Packer has moved for the dismissal of his indictment based on the Government's delay in bringing Packer to trial following his indictment. Packer contends that the delay was unreasonably long and violated his Sixth Amendment right to a speedy trial. This Court—having examined the factors established in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101

(1972), and *Doggett v. United States*, —— U.S. ——, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992)—has determined that Packer's motion should be granted and that the indictment should be dismissed.[1]

*Factual Background*

Defendant Packer was indicted on narcotics conspiracy charges by the federal government ("Government") on June 30, 1987. Defendant was initially a fugitive. On October 26, 1987, Defendant was arrested in Florida and ordered committed to the Central District of California. At approximately the same time, the United States Attorney's Office for the Central District of California was notified by the Los Angeles District Attorney's Office that serious state charges, including murder and rape, were pending against Packer.

In November 1987, the Government agreed to the State's request that the Government release Packer to State custody so that the more serious state charges could be tried first. On November 10, 1987, the Government dismissed the indictment against Defendant without prejudice.

On December 10, 1987, the Government filed a superseding indictment—again charging Packer with offenses related to a narcotics conspiracy. The Government never notified Packer of this superseding indictment. There is no indication that he was aware of the superseding indictment until the scheduling of his arraignment in this court in March 1993.

Defendant has remained in State custody until the present day. Packer's state trial was delayed on numerous occasions either at Packer's request or with his agreement. The state trial did not commence until March 1992. On May 20, 1992, Defendant was convicted of various state charges including second degree murder and attempted murder. Defendant was sentenced in state court on August 4, 1992.

Following defendant's state court sentencing, the Government decided to proceed with the federal charges against defendant. After

---

1. This Court previously filed an Order Denying Defendant's Motion to Dismiss. Defendant Packer filed a motion to reconsider. Having reconsidered, this Court has determined that the previous order was erroneous. The previous order is hereby ordered vacated.

a five-month delay resulting from the Government's misplacing of an earlier arrest warrant, on January 21, 1993, the Government filed a Writ of Habeas Corpus Ad Prosequendum to bring Packer before this Court for arraignment. Defendant was arraigned on March 1, 1993. Defendant moved for dismissal of the indictment for violation of his right to a speedy trial on June 24, 1993.

*Right to Speedy Trial Analysis*

■ *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, established a four-factor analysis for assessing whether post-indictment delay constitutes a speedy trial violation. Under *Barker*, the four factors are:

(1) whether the delay was uncommonly long;

(2) whether the government or the defendant is more to blame for the delay;

(3) whether the defendant asserted his speedy trial rights in due course; and,

(4) whether the defendant suffered prejudice as a result of the delay. *Doggett v. United States*, —— U.S. at ——, 112 S.Ct. at 2690 (describing *Barker* factors).

■ If the delay was unusually long and the result of government negligence, actual prejudice may not have to be shown, and the defendant will be able to rely on a presumption of prejudice. *Doggett*, —— U.S. at —— ——, 112 S.Ct. at 2693–94; *United States v. Shell*, 974 F.2d 1035, 1036 (9th Cir.1992).

*Analysis of the delay*

■ While defendant was indicted on June 30, 1987, the delay in his trial was initially caused by his flight. Defendant's fugitive status ended when he was arrested on October 26, 1987. Custody of Defendant Packer was then promptly transferred to the federal authorities in California.

At approximately the same time the Government obtained custody of Packer, the Government also learned that the State of California wished to prosecute Packer for a set of state crimes, including murder and rape. Given the more serious nature of the state charges, the Government's decision to allow the State prosecution to proceed first was sensible and not negligent. *See United States v. Perez–Cestero*, 737 F.Supp. 752, 768 (S.D.N.Y.1990) (reasonable of federal government to delay federal prosecution when more serious state charges pending). *Cf. Strand v. Schmittroth*, 251 F.2d 590, 595 (9th Cir.1957) (sovereign which has custody of defendant may yield custody to second sovereign for trial of defendant based on charge by second sovereign), *cert. dismissed*, 355 U.S. 886, 78 S.Ct. 258, 2 L.Ed.2d 186 (1957). There is no indication that the Government chose to allow the state case to proceed first in order to obtain any sort of advantage at a delayed federal prosecution.

Once the Government had yielded custody to the state, the Government contends that it did not have any enforceable means of obtaining defendant's return to federal court for prosecution until the State prosecution was completed. The Court agrees with the Government's contention that the Interstate Agreement on Detainers (I.A.D.A.), 18 U.S.C.S. Appendix (1993), does not apply. The I.A.D.A. only enables the federal government to obtain state prisoners after their trial and sentencing in state court. *United States v. Reed*, 620 F.2d 709, 711 (9th Cir.), *cert. denied*, 449 U.S. 880, 101 S.Ct. 229, 66 L.Ed.2d 104 (1980). The I.A.D.A. has no application to state prisoners awaiting state trials. The Court is somewhat less certain about the Government's contention that a federal writ of habeas corpus ad prosequendum would not have been enforceable against the state. *See Carbo v. United States*, 364 U.S. 611, 62 n. 20, 81 S.Ct. 338, 344 n. 20, 5 L.Ed.2d 329 (1961) (declining to determine whether federal writ of habeas corpus ad prosequendum would be enforceable against state authorities if state objected). However, *Strand v. Schmittroth*, 251 F.2d at 598–599, 606, 608–609, stated that the federal government could not force state authorities to deliver a state prisoner to federal authorities for federal trial. For purposes of this order, this Court accepts this statement from *Strand* as binding authority.[2]

---

2. *Strand* involved a readily distinguishable fact situation where a federal judge had placed a defendant on probation and state authorities sought to prosecute the probationer. In *Strand* the Ninth Circuit held that a federal court could not prevent such a state prosecution because a

However, as *Strand* notes, the State authorities could have returned Packer to federal custody as a matter of comity. *Strand,* 251 F.2d at 606–609. The Government concedes that it never asked the State authorities to return Packer for his federal prosecution. Packer contends that the Government should have asked and that the failure to do so was negligent. This Court agrees with Packer's contention.

In *Smith v. Hooey,* 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), the Supreme Court considered a defendant's contention that his speedy trial rights in a Texas state prosecution were violated because Texas delayed his prosecution until the end of Smith's incarceration in federal prison in Kansas. In *Smith,* the defendant had promptly requested a speedy trial in Texas while he was incarcerated by the federal authorities. The Supreme Court held, "Upon the petitioner's demand, Texas had a constitutional duty to make a good-faith effort to bring him before the [Texas] court for trial."

Later cases have established that the Government's duty to make a good-faith effort does not require any demand by a defendant. "Once an accused has been indicted, the government has a constitutional duty to make a diligent, good faith effort to locate, apprehend and bring him to trial." *United States v. Shell,* 961 F.2d 138, 144 (9th Cir.1992). This rule is particularly sensible in cases such as the present one where the defendant does not know of the pending charges.

The Government contends that it does not have to demonstrate a good-faith effort if such an effort would have been futile. This contention is correct. *United States v. Hooker,* 607 F.2d 286 (9th Cir.1979), *cert. denied,* 445 U.S. 905, 100 S.Ct. 1083, 63 L.Ed.2d 321 (1980). However, the burden is on the government to show that a good-faith effort would have been futile. *United States v. McConahy,* 505 F.2d 770, 773 (7th Cir. 1974). To show futility, the Government must show more than the fact that the holding authority's decision would have been dis-

cretionary and that the holding authority might have chosen not to release the prisoner. *Smith v. Hooey,* 393 U.S. at 382, 89 S.Ct. at 579 ("the possibility of a refusal is not the equivalent of asking and receiving a rebuff"); *Prince v. Alabama,* 507 F.2d 693 (5th Cir.) (mere inquiries about timing of release and availability of defendant are not compliance with duty imposed by *Smith* ) (attempts at extradition and issuance of writs of habeas corpus ad prosequendum "would have been in the nature" of the "affirmative action" required by *Smith* ), *cert. denied,* 423 U.S. 876, 96 S.Ct. 147, 46 L.Ed.2d 108 (1975).

*The Government Has Not Established Futility*

The Government has not demonstrated the futility—*throughout the entire period of Packer's state custody pending his state trial*—of a federal government request to the state authorities to yield custody of Packer for federal prosecution. The issue of a good-faith effort and futility "should be adjudicated on a case by case basis taking into account the totality of the circumstances." *United States v. Walton,* 814 F.2d 376, 379 (7th Cir.1987). The Government's papers establish the following factual record:

(1) The federal authorities originally had custody of Packer;

(2) In November 1987, the federal authorities voluntarily yielded custody of Packer to state authorities so that state authorities could proceed with Packer's state prosecution;

(3) Prior to Packer's transfer to state custody, Deputy District Attorney Lauren Weis, the state prosecutor responsible for Packer's state prosecution, informed the federal authorities that the State would not return Packer to federal custody until after the conclusion of Packer's state trial;

(4) When Packer was transferred to state custody, neither the federal authorities nor the state authorities anticipated that Packer's state proceedings would last for more than five years [3];

---

probationer is no longer in the exclusive custody of the federal authorities.

**3.** The Government conceded this fact at oral argument on March 18, 1994. *See also* Declara-

tion of John Gordon, filed July 26, 1993, ¶. 5 (stating that Gordon believed the federal prosecution would be completed after the state prosecution).

(5) Deputy District Attorney Lauren Weis has filed a declaration stating that she would have strongly opposed any federal request for the state authorities to return Packer to federal custody;

(6) Deputy District Attorney Weis no longer had primary responsibility for Packer's state prosecution as of January 25, 1989;

(7) To cover the period following January 25, 1989, the Government has offered declarations from officials in the State Sheriff's Department and in the United States Marshals Service stating that requests by the federal government to the state authorities for the transfer of custody of prisoners awaiting state prosecutions were often not honored.

This record does not establish that a federal request for the custody of Packer would have been futile throughout the entire period in which Packer's state prosecution was pending.[4]

The declarations from officials in the Sheriff's Department and the Marshal's office do not establish that prisoner transfers were never possible as an act of comity. To the contrary, the declarations establish that prisoner transfers could be arranged with the consent of the state authorities.[5]

Aside from these declarations, the Government relies primarily on the declaration of Deputy District Attorney Weis. The Court understands that Weis may properly have thought that the state prosecution should take precedence over the federal prosecution during the year in which she was responsible for the state prosecution. However, Weis cannot establish the state's position during the time period following January 25, 1989, when she was no longer responsible for state prosecution.

Weis's statement to a federal prosecutor that the State would not return Packer to federal custody until after the conclusion of

---

**4.** The Court finds distinguishable the line of cases cited by the Government where courts have found that a government extradition request to a foreign government would have been futile. *United States v. Hooker,* 607 F.2d 286 (9th Cir. 1979); *United States v. Diacolios,* 837 F.2d 79 (2d Cir.1988); *United States v. Mitchell,* 957 F.2d 465, 469 (7th Cir.1992); *United States v. Blanco,* 861 F.2d 773 (2d Cir.1988), *cert. denied,* 489 U.S. 1019, 109 S.Ct. 1139, 103 L.Ed.2d 200 (1989). These cases are distinguishable for a number of reasons:

(1) In certain cases, the record established that requests for extradition to the custodial country were systematically never honored. *Mitchell,* 957 F.2d at 467, 469 (record establishes futility of attempting extradition from Colombia); *Blanco,* 861 F.2d at 778 (same).

(2) In one case, the record established that the custodial country never permitted extradition as an act of comity. *Diacolios,* 837 F.2d at 83.

(3) In certain cases, the courts have noted that the act of requesting extradition from a foreign country involves delicate matters of foreign policy in which the Constitution grants nearly unfettered discretion to the executive branch. *Hooker,* 607 F.2d at 289; *Diacolios,* 837 F.2d at 83.

In the present case, the record does not establish that the state authorities would never exercise their discretion to yield custody nor that the state authorities would not have yielded custody in a case such as this where the federal authorities had initially yielded custody to the state. Furthermore, the act of requesting a transfer of custody from state to federal authorities does not involve the kind of delicate foreign policy con-

cerns involved in foreign extradition requests. *See Hooker,* 607 F.2d at 288–289 (holding that international extradition not comparable to intra–United States transfer for speedy trial analysis).

**5.** On July 26, 1993, the Government filed a declaration from Lieutenant John Bauer of the Sheriff's Office. Lieutenant Bauer stated:

[P]rior to August 22, 1991, the policy of the Sheriff was to refuse to honor federal writs of habeas corpus ad prosequendum *unless the state prosecutor and the state judge consented.* (Emphasis added).

Lieutenant Bauer further stated:

If the state authorities consented to the transfer of the inmate to federal custody, the [Sheriff] would honor the writ and deliver the inmate to the United States Marshal. If the inmate was facing serious state charges, the [state] prosecutor would *usually* refuse consent.... (Emphasis added).

On February 9, 1994, the Government filed a supplemental declaration by Lieutenant Bauer in which he stated that federal requests for the transfer of prisoners with pending state trials "would *generally* not be honored."

On February 9, 1994, the Government filed a declaration by Chief Deputy Charles Almanza of the United States Marshals Service. In his declaration Deputy Almanza stated that it was his "understanding" that the Sheriff's department would deny requests for prisoner transfers "unless the Sheriff's Department received the approval of the Los Angeles County District Attorney."

Packer's state trial cannot reasonably be understood to have been a blanket refusal for the subsequent period of more than five years during which Packer's state prosecution was pending. When Weis made the statement, a five-year delay was not contemplated. Furthermore, Weis was not the ultimate authority within the District Attorney's Office. At some point, a direct request at the highest levels, i.e., by the United States Attorney to the District Attorney, might have resulted in the State yielding custody of Packer for a federal prosecution. The District Attorney might have recognized that this was an unusual situation where an act of comity was appropriate because the federal authorities had initially yielded custody of Packer to the state in a comparable act of comity. *See Smith v. Hooey*, 393 U.S. at 381–83, 89 S.Ct. at 579 (noting history of cooperation between state and federal authorities); *United States v. Hooker*, 607 F.2d at 288–289 (same). At some point during Packer's state incarceration, the Government should have questioned its "progressively more questionable assumption" that the State would have refused a federal request for custody of Packer. *See Doggett*, — U.S. at —, 112 S.Ct. at 2691.

This Court finds the present situation comparable to the facts underlying *United States v. Geelan*, 520 F.2d 585 (9th Cir.1975). Geelan was arrested by Arizona authorities on state charges on March 15, 1968. On April 1, 1968, a federal detainer was placed on Geelan, and he was indicted on federal charges on May 1, 1968. On September 19, 1968, Geelan was declared incompetent to stand trial by an Arizona Court. After more than four and three-fourths years, on July 18, 1973, Geelan was found competent and was released to the custody of the state authorities. On April 17, 1974, the state charges were dismissed and Geelan was handed over to the federal authorities. Defendant moved for dismissal of his charges for violation of his right to a speedy trial. The district court denied the motion. The Court of Appeals reversed after analyzing the *Barker v. Wingo* factors.

In analyzing the reason for the delay, the Court held:

> We think that the United States Attorney here abdicated his responsibility to Geelan. After Geelan's commitment to the Arizona State Hospital, the prosecutor apparently forgot about him until he was notified, because of a detainer, that Geelan was about to be released from state custody.

> At a minimum, the United States Attorney should have required periodic reports on Geelan's condition from the Arizona State Hospital.

> We think that the United States Attorney was entitled to rely initially on the finding by the Arizona court that Geelan was incompetent to stand trial.... [However,] we believe that the United States Attorney violated his duty to Geelan by failing to require regular reports on his condition.

> When Geelan remained incompetent for a substantial period, the United States Attorney should have made an effort to determine, when, if ever, Geelan would become competent. The obligations of the United States Attorney increased with the passage of time.

In light of *Smith, Doggett* and *Geelan*, this Court concludes that the Government's offer of proof does not establish that a request to the State would have been futile.

■ Having made this determination, the Court must determine when such a request should have been made. This Court has determined that the Government's failure to request the State to transfer custody became negligent on January 25, 1989. As of that date, Weis was no longer primarily responsible for the state prosecution.[6] By that date, the federal prosecution of Packer's co-defendants had been complete for several months so the Government could persuasively demonstrate to the State authorities that a federal prosecution would only require the State to yield custody of Packer for a period of a

---

**6.** As of January 25, 1989, the Government either (1) knew that Weis no longer had primary responsibility for the State prosecution or (2) should have learned of the new situation as a result of diligent monitoring of the state court proceedings.

few months. Finally, January 25, 1989, is an appropriate date to select because by January 25, 1989, more than a year had passed since the time the Government obtained the superseding indictment against Packer. *Cf. Doggett,* —— U.S. at —— n. 1, 112 S.Ct. at 2691 n. 1 (lower courts have generally found one-year post-indictment delay sufficient to trigger further speedy trial inquiry in light of "presumptive prejudice" of such delays).

Thus, the Government's negligent failure to request re-transfer of Packer to federal custody delayed Packer's federal trial from January 25, 1989, until the completion of Packer's state criminal proceedings on August 4, 1992. A further five-month delay from August 1992 to January 1993 resulted from the federal government's mishandling of its arrest warrant for defendant. These two acts of Government negligence created a four-year delay in Packer's federal trial.[7]

### Barker Analysis

Based upon this analysis, this Court must now examine the *Barker* factors.

### Defendant's Assertion of His Speedy Trial Rights

Defendant could not reasonably have asserted his speedy trial rights until he learned of the pending charges in early 1993. The Government concedes that Defendant asserted his speedy trial rights in due course after being notified of the pending federal charges.[8]

### Length of the Delay

*Doggett* establishes that length of delay is "actually a double enquiry." —— U.S. at ——, —— n. 1, 112 S.Ct. at 2690, 2691 n. 1. To trigger a full-speedy trial analysis, a defendant must show that the interval between accusation and trial has crossed the line between ordinary delay and unreasonable delay.

The sixty-three month delay from the time the Government obtained the superseding indictment against Packer on December 10, 1987, to the time of his return transfer to federal court on March 1, 1993, is more than sufficient to justify inquiry into the other *Barker* factors.[9] *United States v. Beamon,* 992 F.2d 1009, 1012–1013 (9th Cir.1993) (seventeen month delay sufficient to justify further inquiry).

### Reason for the Delay

The length of the delay must be examined in light of the degree of culpability or negligence reflected in the Government's actions. *See United States v. Beamon,* 992 F.2d at 1012 (length of delay must be examined in light of degree of diligence by the government); *Barker,* 407 U.S. at 530–31, 92 S.Ct. at 2192 (negligence and delay due to overcrowded calendars are government's responsibility, but are less significant than bad faith or unfair government tactics). This Court has concluded that forty-eight months of the delay resulted from the Government's negligent failure to request the State to return Packer to federal custody. Of the remaining

---

7. Following the delay from August 1992 to January 1993, Defendant Packer's transfer to federal court was further delayed for an additional two months by the state authorities slow processing of the papers filed by the federal government. This two-month delay cannot reasonably be attributed to any negligence by the *federal* government. This same delay could easily have occurred if the Government had requested the state authorities to transfer Packer in January 1989 and the state authorities had agreed to the request. This two-month period is therefore not considered in calculating the relevant delay attributable to the Government's negligence.

The length of the relevant delay is also not extended by the three months that it reasonably took Packer's counsel to prepare this motion to dismiss. *See Doggett,* —— U.S. at ——, 112 S.Ct. at 2690 (measuring length of delay until defendant was arrested by federal authorities not date

of motion for dismissal); *Shell,* 974 F.2d at 1035–1036 (measuring length of delay until Government diligently began to search for defendant).

8. Defendant's timely assertion of his speedy trial rights aids the defendant in maintaining his speedy trial claim, but is not a significant factor in the granting of Defendant's motion.

9. The Ninth Circuit has not resolved the question of whether the clock begins running at the time of the initial indictment or at the time of the final superseding indictment. *United States v. Sears, Roebuck and Co., Inc.,* 877 F.2d 734, 739 (9th Cir.1989). This Court has used the shorter time period for purposes of this analysis because the Court has concluded that the shorter time period more than suffices to support the Court's conclusion.

fifteen months of delay, thirteen months resulted from the Government's non-negligent, reasonable decision to allow the State the opportunity to proceed with the state charges and two months resulted from the State's slow processing of the papers necessary for Packer's transfer. The Government is not to blame for these fifteen months of delay. Arguably, Packer is partially responsible for at least the thirteen-month delay because his commission of state offenses justified a delay of at least that length of time to resolve his state proceedings. The remainder of this Court's analysis will focus on the forty-eight months of delay attributable to the Government's negligence.

*Prejudice to the defendant*

■ In analyzing the prejudice factor, the *Barker* Court identified three interests protected by defendant's speedy trial rights. The three interests which may be prejudiced by an excessive delay are:

(1) preventing oppressive pretrial incarceration,

(2) minimizing anxiety and concern, and

(3) limiting the possibility that delay will impair the defense. *Barker,* 407 U.S. at 532–33, 92 S.Ct. at 2193.

Defendant Packer cannot establish any significant prejudice on either of the first two prongs. The first interest is not implicated because—regardless of the pending federal charges—Packer would have been been incarcerated by the state.[10] *See Russell v. Lynaugh,* 892 F.2d 1205, 1216 (5th Cir.1989) (speedy trial concerns lessened because defendant was already incarcerated on unrelated charges). The second interest is not implicated because Packer was unaware of the pending federal charges and therefore cannot have suffered any anxiety or concern due to the lack of resolution of the federal charges.

However, the third interest, i.e., the possibility that delay will impair the defense, is the most important interest protected by the defendant's right to a speedy trial. *See Barker,* 407 U.S. at 532–33, 92 S.Ct. at 2193. The Court agrees with the government that Packer has not demonstrated actual preju-

dice caused by the delay. However, "consideration of prejudice is not limited to the specifically demonstrable." *Doggett,* —— U.S. at ——, 112 S.Ct. at 2692. "[E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Id.* at ——, 112 S.Ct. at 2693. "[S]uch is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows." *Id.* at ——, 112 S.Ct. at 2693.

In *Doggett,* the Supreme Court held that a six-year period of negligent delay (as part of a eight-and-one-half year delay between indictment and arrest) created a strong presumption of prejudice. *Id.* at ——, 112 S.Ct. at 2694. In *Shell,* the Ninth Circuit held that a five-year negligent delay "creates a strong presumption of prejudice." 974 F.2d at 1036. In *Beamon,* the Ninth Circuit held that a twenty-month negligent delay does not altogether excuse the defendant from the burden of showing actual prejudice. 992 F.2d at 1014. This Court holds that the four-year delay attributable to the Government's negligent failure to ask the State to return Doggett (as part of the more than five-year delay between the final indictment and arraignment in federal court) creates a presumption of prejudice sufficient to excuse the defendant from needing to make a showing of actual prejudice.

■ *Doggett* held that the Government is entitled to attempt to "persuasively" rebut this presumption of prejudice. —— U.S. at ——, 112 S.Ct. at 2694. However, the Court indicated that such prejudice would be difficult to rebut. *Id.* at —— n. 4, 112 S.Ct. at 2694 n. 4. In *Shell* the Ninth Circuit held that the Government had not "persuasively rebutted" the presumption even though the defendant had "conceded that most of the essential witnesses and documentary evidence [are] still available." 974 F.2d at 1036.

In the present case, the Government has not persuasively rebutted the presumption of prejudice. While the Government has dem-

---

10. Unlike in *Smith,* there is no indication that Packer's state sentence might have been extend-

ed by the pending federal charges. 393 U.S. at 377–79, 89 S.Ct. at 577.

onstrated that there are extensive tape-recordings of Packer's conversations during the period of the alleged conspiracy and that there are certain conversations which allegedly refer to the other specific charged transactions, the Government has not rebutted the presumption that Packer's defense has been impaired. Packer has apparently conceded that, during the time period in question, he did on some occasions sell drugs. However, this is not enough for the Government to prove its allegations. With respect to the conspiracy allegations, the Government must show that Packer had agreed with other people to distribute the drugs, not merely that he brought drugs from certain people and sold those drugs to other people. The Government's key witness is Nei Wells who would testify that Packer was part of a drug distribution conspiracy. However, the passage of time has impaired Packer's ability to remember the specific details of his relationship with Wells and the other alleged co-conspirators, as well as impairing his ability to develop evidence to impeach Wells' testimony.[11] With respect to the charges of drug distribution on specific days, the Government has not shown that Packer has the same ability today that he would have had five years ago to reconstruct his activities on those specific days. Packer's alleged imperfect memory is credible given the passage of time, particularly given the fact that the Government had failed to notify Packer that any federal charges were pending. With respect to the events surrounding at least one of the alleged transactions, Packer has stated and the Government has not contested that one of the percipient witnesses died during the period of delay. None of the surveillance evidence preserved by the Government eliminates these problems. This Court therefore concludes that the Government has not rebutted the presumption of prejudice arising out of the Government's negligent delay in bringing Packer to trial.

Since all of the *Barker* factors favor dismissing the indictment in this case, THIS

COURT HEREBY ORDERS THE DISMISSAL OF THIS INDICTMENT AND ALL UNDERLYING INDICTMENTS CHARGING WILLIAM PACKER WITH THE DRUG OFFENSES IN QUESTION.

IT IS SO ORDERED.

---

11. The burden is on the Government to rebut the presumption of prejudice. With respect to Packer's relationship with Wells and the other alleged co-conspirators, the Government has not provided the Court with any material establishing that Packer has sufficient resources, e.g., prior testimony or taperecorded conversations, fully to refresh his recollection of their relationships to him or their credibility.