**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-4272**

UNITED STATES OF AMERICA,

            Plaintiff - Appellee,

      v.

BERNARDO AUGUSTINE LLOYD,

            Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt.  Roger W. Titus, Senior District Judge. (8:12-cr-00354-RWT-1)

Argued:  March 1, 2016                    Decided:  April 20, 2016

Before MOTZ, GREGORY, and THACKER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED**: Jennifer L. Mayer, Richard Alan Finci, HOULON, BERMAN, FINCI, LEVENSTEIN & SKOK, LLC, Greenbelt, Maryland, for Appellant.  Sujit Raman, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.  **ON BRIEF**: Rod J. Rosenstein, United States Attorney, Hollis Raphael Weisman, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Bernardo Lloyd ("Appellant") was speeding and zig-zagging through traffic on the Baltimore-Washington National Parkway ("Parkway") when his Lexus sedan struck the back of a pickup truck being driven by Juan Lopez Sanchez. The truck flipped and careened off the Parkway. Sanchez died at the scene. On June 25, 2012, a grand jury indicted Appellant for involuntary manslaughter. He was not arrested until 15 months later, on September 23, 2013. Eventually, his case proceeded to trial and a jury found him guilty. Appellant maintains that the 15-month delay between indictment and arrest violated his Sixth Amendment right to a speedy trial. He also argues that an expert witness was improperly allowed to testify at trial as to the cause of the accident, and he maintains he was entitled to a sentence reduction because he accepted responsibility for his offense.

We affirm Appellant's conviction and sentence. His Sixth Amendment rights were not violated because the 15-month delay between his indictment and his arrest was not extraordinary and did not impair his defense. We also find ample support for the district court's decision to allow an experienced accident reconstructionist to testify, consistently with the opinion of another expert, about the cause of the accident. And, given Appellant's testimony at trial, during

2

which he did not accept responsibility for the accident but, rather, testified that he was not driving recklessly, we have no quarrel with the district court's decision not to impose a more lenient sentence.

## I.

On January 31, 2012, Appellant rear-ended Sanchez's pickup truck. The front end of Appellant's vehicle underrode the pickup with enough force that material from the car's bumper was wrapped around the truck's rear axle. Sanchez's truck flipped off the road. Sanchez was killed.

Police took statements from witnesses at the scene, made measurements of the wreckage, photographed the crash site, and then impounded the two vehicles. About six months later, on June 25, 2012, a grand jury in the District of Maryland issued an indictment charging Appellant with, among other things, involuntary manslaughter in violation of 18 U.S.C. § 1112(a).[1] A warrant for Appellant's arrest issued the following day. However, he was not arrested until September 23, 2013, roughly 15 months later. Appellant raised the issue of the delay soon after being arrested. Just under a year later, he moved to

---

[1] Appellant was also charged with one count of reckless driving in violation of 36 C.F.R. § 4.2, but the jury was instructed not to consider that offense if it convicted on the involuntary manslaughter charge.

dismiss the indictment, alleging a violation of his Sixth Amendment right to a speedy trial. Specifically, he claimed that, due to the delay, his expert crash reconstructionist, Wendell Cover, had been unable to inspect the wrecked vehicles and, therefore, could not present a theory about the cause of the accident. Although the vehicles had been released from impound and were indeed unavailable, the district court nevertheless denied the motion, reasoning that Appellant's defense would not be impaired.

The ensuing three-day trial focused on the cause of the accident. The evidence showed Appellant was speeding prior to the collision. He testified that he saw a car rapidly approaching in his rearview mirror and, thinking it might be a police cruiser, moved into the right-hand lane. The car, a Nissan, sped by; Appellant pulled in behind the Nissan and hit the gas. At that point, according to Appellant, he was driving fast enough to pass the other cars in the right-hand lane, but not as fast as the Nissan, which quickly disappeared into the distance.

At some point, though, Appellant caught up with the Nissan. Both cars zig-zagged around another driver, Joseph McCann, in short succession: the Nissan passed on McCann's left, straddling two lanes; Appellant's Lexus then zipped by on the right, driving partially on the shoulder. And Appellant himself

4

testified that, shortly before the accident, he saw the Nissan behind him in his side-view mirror.

McCann estimated that Appellant and the driver of the Nissan were traveling over 100 miles per hour. David Feser, an off-duty police officer trained in speed detection, was also on the road that day and testified as a fact witness. He estimated Appellant's Lexus was traveling 90 to 100 miles per hour, characterized Appellant's driving as reckless, and thought it likely the car would be involved in an accident. Unfortunately, he was right.

Two experts testified for the Government. Corporal Charles Russell, an experienced accident reconstructionist, analyzed data from the Lexus' airbag control module, examined photographs and measurements taken at the scene, and reviewed witness statements about the crash. From this information, he extrapolated that Appellant was driving approximately 100 miles per hour before the crash and saw no evidence that Sanchez's actions contributed to the wreck. As a result, Corporal Russell opined, over Appellant's objection, that the single likely cause of the accident was "the excessive speed of the Lexus." J.A. 252.[2]

---

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

5

Officer Ken Bentivegna of the United States Park Police ("Park Police") also testified as an expert. He was present at and documented the crash scene, and also examined the vehicles in a Park Police impound lot at some point after they were removed from the roadway. He reached no specific conclusion about Appellant's speed, but he saw nothing in pictures of the tire marks and other impressions on the road that indicated aggressive pre-impact braking by either Appellant or Sanchez. Therefore, he concluded, "[T]he operator of the Lexus was going too fast to control his vehicle, failed to brake appropriately to avoid the collision and was driving in a reckless manner which is what led to the collision between the Lexus and" Sanchez's pickup truck. S.J.A. 446.[3]

Appellant, for his part, claimed that he rounded a bend in the Parkway and moved into the far-right lane. As he did so, he observed Sanchez's truck also move "suddenly" into that lane, so Appellant began to drift back into the center lane. J.A. 307. He says he then saw the Nissan in his side-view mirror "pushing its way into the center lane," id. at 307, so he returned to the right-hand lane. At that moment, according to Appellant, Sanchez applied his brakes. Appellant

_____

[3] Citations to the "S.J.A." refer to the Supplemental Joint Appendix filed by the parties in this appeal.

6

"tried to go to the right as fast as [he could]," but he collided with the truck, sending both off the road. Id. at 308-09. Appellant denied that he was driving recklessly. He presented no expert testimony of his own to counter the Government's.[4]

The jury was thus presented with two relatively straightforward theories of the case: In the Government's view, the evidence indicated that Appellant's reckless speed caused him to rear-end Sanchez's truck. Appellant allowed that he was speeding, but denied driving recklessly and maintained he was simply unable to avoid the truck when Sanchez applied the brakes. The jury, which found Appellant guilty of involuntary manslaughter, evidently credited the Government's account.

At sentencing, the district court denied Appellant's request for a downward adjustment based on acceptance of responsibility and imposed a 63-month term of imprisonment. This timely appeal followed.

---

[4] Although Appellant presented Cover's expert testimony at the hearing on his motion to dismiss the indictment, he chose not to present Cover's testimony at trial.

II.

A.

<u>Speedy Trial Challenge</u>

Appellant first challenges the district court's decision denying the motion to dismiss the indictment on speedy trial grounds. We review the district court's factual findings for clear error, <u>see</u> <u>United States v. Perry</u>, 757 F.3d 166, 171 (4th Cir. 2014), and its legal conclusion about the effect of the delay de novo, <u>see</u> <u>United States v. Hall</u>, 551 F.3d 257, 266 (4th Cir. 2009).

The Sixth Amendment guarantees the accused in all criminal prosecutions the right to a speedy trial. <u>See</u> U.S. Const. amend. VI. Some delays in bringing a defendant to trial are simply too brief to violate the Constitution. <u>See</u> <u>Doggett v. United States</u>, 505 U.S. 647, 651-52 (1992). But delays approaching -- or, as here, exceeding -- one year presumptively surpass the bare minimum required to trigger a constitutional inquiry. <u>See</u> <u>id.</u> at 651-52 & 652 n.1. So, like the district court, we must "engage in a difficult and sensitive balancing process" that assesses the length of the delay, the reason for the delay, how vigorously Appellant asserted his speedy trial rights, and the extent to which Appellant was prejudiced by the delay. <u>Barker v. Wingo</u>, 407 U.S. 514, 530-33 (1972). "[N]one of the four factors . . . [is] either a necessary or sufficient

8

condition to the finding of a deprivation of the right of speedy trial." See id. at 533. But if those factors, considered collectively, weigh in Appellant's favor, then we must dismiss the indictment lodged against him. See Vermont v. Brillon, 556 U.S. 81, 93 (2009) ("The factors identified in Barker have no talismanic qualities" (internal quotation marks omitted)).

1.

Length and Reason for Delay

We consider the first two factors -- length and reason for the delay -- together. The pertinent delay is the 15-month gap between indictment and arrest. That period of time is long enough to merit inquiry into the remaining factors, but not an "extraordinary" delay. Doggett, 505 U.S. at 657-58 (eight-and-a-half year delay was extraordinary); Barker, 407 U.S. at 533 (delay of over five years extraordinary). And the delay is attributable solely to the Government -- the authorities knew at all times where to find Appellant; arresting him simply was not a priority. Being simply dilatory does not weigh as heavily against the Government as a "deliberate attempt to delay the trial in order to hamper the defense . . . ." Barker, 407 U.S. at 531. However, even a "more neutral reason such as negligence," id., still "falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying

9

criminal prosecution once it has begun," Doggett, 505 U.S. at 657.

## 2.

### Assertion of the Speedy Trial Right

As for the third factor, the Government makes much of the fact that Appellant waited nearly a year after his arrest to move to dismiss the indictment. Yet there is no denying that Appellant promptly raised the issue at his arraignment. See Doggett, 505 U.S. at 654 ("[The defendant] is not to be taxed for invoking his speedy trial right only after his arrest," where it was unrebutted that defendant was unaware of indictment until his arrest.).

## 3.

### Prejudice

That leaves the question of prejudice. "Negligence over a sufficiently long period can establish a general presumption that the defendant's ability to present a defense is impaired, meaning that a defendant can prevail on his claim despite not having shown specific prejudice." United States v. Velazquez, 749 F.3d 161, 175 (3d Cir. 2014); see also Doggett, 505 U.S. at 658. In Doggett, for example, the Supreme Court held that an eight-and-a-half year delay caused by the Government's negligence violated the Sixth Amendment because the presumed prejudice to the defendant was "neither extenuated, as

by the defendant's acquiescence, . . . nor persuasively rebutted." Id. at 658 (footnotes omitted) (citation omitted). But significantly shorter delays arising from government negligence, like the 15-month delay here, do not excuse a defendant from showing actual prejudice. See, e.g., United States v. Parker, 505 F.3d 323, 328-29 (5th Cir. 2007) (17-month delay does not obviate need to inquire into prejudice); United States v. Clark, 83 F.3d 1350, 1353-54 (11th Cir. 1996) (per curiam) (17-month delay "insufficient to excuse a defendant from" showing prejudice); United States v. Beamon, 992 F.2d 1009, 1013-14 (9th Cir. 1993) ("Although the government did not pursue Beamon and McMillin with due diligence, if the delay in this case -- only a few months longer than the minimum -- were sufficient as a matter of law to relieve the defendant of the burden of coming forward with any showing of actual prejudice, the presumption of prejudice would be virtually irrebuttable.").

Instead we consider whether the delay actually impaired Appellant's defense.[5] See, e.g., United States v. Gregory, 322 F.3d 1157, 1163 (9th Cir. 2003) ("[W]e have held that when the government has been negligent and the delay does

---

[5] Other forms of prejudice, such as pretrial incarceration and the anxiety caused by living under threat of prosecution, are not relevant here because the delay in this case preceded Appellant's arrest and he did not know about the indictment until he was arrested.

11

not far exceed the minimum time required to trigger the full Barker inquiry, we must consider the amount of delay in relation to particularized prejudice." (internal quotation marks omitted)). Appellant argues his defense was impaired because the Park Police released the wrecked vehicles from impound before he was arrested. As a result, Appellant's expert, Wendell Cover, was unable to inspect the vehicles and testified at a pre-trial hearing that he could not reconstruct the accident or come to a conclusion about what caused the accident. We struggle, however, to identify any actual prejudice to Appellant's defense. The competing theories of this case, as we have explained, are that Appellant was driving too fast to avoid the truck, or that Appellant had no opportunity to avoid the collision when Sanchez hit the brakes. Yet a closer examination of Cover's testimony simply does not establish how inspecting the wrecked vehicles would have allowed him to prove or disprove either of those theories.

Like Appellant's expert, Corporal Russell did not examine the vehicles involved in the accident. And the information on which Corporal Russell based his opinion as to speed was likewise available to Cover, Appellant's expert. Further, Cover testified during the pre-trial hearing that "a simple speed calculation" was the sort of conclusion that could be reached by examining data from the airbag control module,

12

even without physically inspecting the vehicles. <u>See</u> J.A. 79-81. It is true that Corporal Russell's conclusions about Appellant's speed were based in part on assumptions he made about the Lexus' tire size and gear ratios, variables that presumably could have been definitively established by inspecting the vehicles. But defense counsel ably explored these limitations of Corporal Russell's testimony on cross-examination. Moreover, Corporal Russell's opinion was consistent with eyewitness testimony about Appellant's speed, and, in fact, Appellant did not deny speeding, contradict Corporal Russell's estimate, or even object to the validity of his calculations. We therefore fail to see how an inspection of the vehicles would have allowed Appellant to contest the Government's considerable proof as to his pre-accident speed.

Nor does Cover's testimony explain how access to the vehicles would have bolstered Appellant's theory that Sanchez's braking contributed to the cause of the crash. Cover emphasized that "when you have a case of who crossed the center line or who was within their lane of travel at the time of impact, you must have a factual and scientific basis as to the point of impact and the vehicle's relationship to those lane lines, you must [inspect the damage to the actual vehicles]." J.A. 79. Fair enough. But the position of the vehicles prior to the fatal collision in this case was never seriously in dispute.

13

Appellant did not testify that Sanchez collided with him while changing lanes. As Appellant explained, he saw Sanchez move ahead of him into his lane of travel. But, even crediting his version of events, Appellant still had time to begin to move back into the center lane, realize that option was not available to him, and drift back behind the truck before Sanchez allegedly applied his brakes.

The relevant question, then, was whether Appellant was simply traveling too fast to avoid the collision, or whether Sanchez braked too aggressively. Cross-examination of Officer Bentivegna suggested that it may have been possible to examine the pickup truck's brake filaments for evidence of braking. But Bentivegna did not rule out the possibility that the truck braked; he testified that there were no skid marks suggestive of aggressive pre-contact braking, while allowing that normal application of the brakes would not have left such marks. And Cover did not explain how examining the actual vehicles involved in the accident would have enabled him to contradict Bentivegna's observation that the tire marks left on the Parkway did not indicate that Sanchez braked aggressively prior to the crash.[6]

---

[6] We also note that nothing in the record establishes that the vehicles were destroyed after they were released from the Park Police impound. Instead, Detective Wayne Humberson (Continued)

14

At the end of the day, the Government's case turned on Corporal Russell's estimate (corroborated by other testimony) that Appellant was travelling upwards of 90 miles per hour, together with Officer Bentivegna's testimony that there was no indication Sanchez braked aggressively before impact. Cover's testimony simply does not establish how examining the wrecked vehicles would have allowed him to contradict those opinions. And Appellant's trial counsel ably pointed out the potential weaknesses in the Government's expert opinions on cross-examination. We therefore fail to see how Appellant's defense was impaired in anything more than a speculative manner, and speculative prejudice will not do. See United States v. Loud Hawk, 474 U.S. 302, 315 (1986) ("Th[e] possibility of prejudice is not sufficient to support respondents' position that their speedy trial rights were violated." (emphasis supplied)).

We are thus left with an unremarkable delay, caused by the Government's negligence, to which Appellant objected, but

---

testified that the Lexus and the truck were turned over to the owners' respective insurance companies. Appellant did not establish that those insurers thereafter destroyed the vehicles or refused to make them available for inspection. And strikingly, given the asserted importance of inspecting the wreckage, neither Appellant nor his expert, Cover, testified that they made any effort to contact the insurers to inquire after the vehicles. For all the record discloses, then, the vehicles may not have been truly lost at all.

15

which did not impair his defense.  Under those circumstances, we agree with the district court's conclusion that Appellant's Sixth Amendment right to a speedy trial was not violated.  See Beamon, 992 F.2d at 1014 ("On balance, we cannot say that the government's negligence, which caused a delay less than [24 months], in light of the presumption of prejudice and the tenuous showing of actual prejudice, entitles Beamon and McMillin to relief.").

B.

Appellant's remaining challenges can be readily dispatched.

1.

Admission of Expert Testimony

Appellant first argues Corporal Russell should not have been permitted to testify that "the excessive speed of the Lexus" was "the single thing" that most likely caused the accident.  See J.A. 252.  We review the district court's decision to admit expert testimony for abuse of discretion.  See United States v. Fuertes, 805 F.3d 485, 495-96 (4th Cir. 2015).  Corporal Russell's calculation of the Lexus' likely speed was based on observations of data and mathematical calculations to which Appellant did not object.  And Appellant did not dispute that the Lexus struck the truck.  We take it, then, that Appellant objects to Corporal Russell's implication that speed,

16

rather than Sanchez's braking, was the primary cause of the wreck.

Federal Rule of Evidence 702 provides that an expert qualified by "knowledge, skill, experience, training, or education" may give opinion testimony if it "will help the trier of fact to understand the evidence or to determine a fact issue," so long as the "testimony is based on sufficient facts or data" produced by reliable principles and methods that have been reliably applied to the facts of the case. See Fed. R. Evid. 702(a)-(d). Corporal Russell has over 20 years' experience investigating crashes. He based his speed estimate on a series of calculations using the airbag control module data downloaded from Appellant's Lexus. He also reviewed Officer Bentivegna's report and conclusion, as well as "all the evidence that the [P]ark [P]olice had," including the same photographs and diagrams of the crash scene on which Officer Bentivegna based his testimony. See J.A. 227 ("I've looked at the photographs of the vehicles. I've looked at the data they have. I have seen the diagrams, the witness statements. You know, so I examined all the evidence that the [P]ark [P]olice had."). Given that Appellant did not object to the admissibility of Corporal Russell's speed estimate or to Officer Bentivegna's testimony that Sanchez did not brake aggressively, we fail to see any abuse of discretion in admitting Corporal Russell's

17

opinion that Appellant's speed caused the accident.  See Westfield Ins. Co. v. Harris, 134 F.3d 608, 612 (4th Cir. 1998) (observing that an expert's opinion may be "based, not only on data and direct observations, but also on the opinions and observations of others").

## 2.

### Sentencing

Finally, Appellant argues the district court should have afforded him a two-level reduction in his base offense level at sentencing for three reasons: he cooperated with law enforcement at the scene of the accident and thereafter willingly gave a statement; he never denied his involvement in the accident or that he was speeding; and he went to trial only to contest the speedy trial issue and the legal issue of whether the federal involuntary manslaughter statute applied to his conduct.  We review the district court's sentencing decision on this point for clear error.  See United States v. Jeffery, 631 F.3d 669, 678 (4th Cir. 2011).

Section 3E1.1 of the United States Sentencing Guidelines provides that a defendant who "clearly demonstrates acceptance of responsibility" is entitled to a two-level reduction in the calculation of his offense level.  See U.S.S.G. § 3E1.1.  "Conviction by trial . . . does not automatically preclude a defendant from consideration for such a reduction."

18

Id. cmt. n.2. "This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt . . . ." Id.

In this case, however, the evidence supports the district court's conclusion that Appellant did dispute his factual guilt. As the district court explained, the statute in question required the Government to prove that Appellant's conduct was willful and wanton. Yet Appellant "took the stand and testified. Clearly the thrust of his testimony was in denial of the willful and wanton nature of his conduct in attempting to in effect blame the victim in this case for changing lanes." J.A. 325. Indeed, Appellant testified "the pickup truck went in front of [him] suddenly," id. at 307; "the brake lights of the truck went on and that's when the accident occurred," id. at 308; and he was not driving recklessly, see id. at 311 (Q: Was the manner in which you were driving reckless -- A. No, sir.). Clearly, Appellant did not accept responsibility for the accident. Accordingly, the district court did not clearly err in denying Appellant credit for doing so. See United States v. Dugger, 485 F.3d 236, 239 (4th Cir. 2007) ("We must give great deference to the district court's decision because the sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility." (internal quotation marks omitted) (citations omitted)).

19

### III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.